[Civ. No. 5456.   Third Appellate District.—January 9, 1936.]

MAUD SARGENT KELSO, Plaintiff and Respondent, v. HOWARD C. SARGENT et al., Appellants; ALMA M. SARGENT et al., Defendants and Respondents.

Olin L. Berry, George E. Lawton and Vincent Suhr for Appellants.

Farrand & Slosson and Eli F. Bush for Plaintiff and Respondent.

Flint & McKay, Wesley L. Nutten, Jr., and Mark A. Walsh for Defendants and Respondents.

PLUMMER, J. — This action was prosecuted under the provisions of section 1060 of the Code of Civil Procedure for the purpose of obtaining declaratory relief. The real purpose of the action was to obtain a judicial interpretation of paragraph IV of a certain contract. The contract was signed by all of the parties to this action, and the paragraph in question is in the following words: "That the executor of said last will and testament is authorized and shall pay, from any moneys in its hands, any and all estate and inheritance taxes, and the specific inheritance tax chargeable against any devise or bequest received under said will, or this agreement shall be paid by the said executor, as aforesaid, but shall be deducted from the amount of such devise or bequest, or the amount received by such party under said agreement."

The agreements entered into by the parties to this action changed the amounts which they otherwise would have re-

ceived under the will, and the disputed question is as to whether the respective parties should pay the inheritance tax as fixed by the inheritance tax appraiser and chargeable to the respective bequests named in the will, or whether the inheritance tax should be apportioned so that each of the parties would pay the amount of the inheritance tax that might be figured out and considered as charged ratably against that portion of the estate which the respective parties might receive under the agreement. The court interpreted the paragraph to mean that each of the parties named in the will, and also in the agreement, should pay the inheritance tax upon the amount of the bequest named in the will and ascertained by the inheritance tax appraiser according to the provisions of the law relating thereto fixing the amount to be paid by each legatee upon the amount or portion of the estate received by such legatee under the provisions of the will.

The appellants contend that the paragraph should be construed to mean that the inheritance tax should be apportioned and paid as chargeable against the amounts received under the agreement, and not as fixed and charged by the inheritance tax appraiser against the amount of the devise or bequest received by the respective parties under the terms of the will.

E. W. Sargent died on or about the 2d day of August, 1929, leaving estate in Los Angeles County. The last will of E. W. Sargent, together with two codicils, appears to have been duly admitted to probate on or about the 3d day of September, 1929, and the Title Guarantee & Trust Company, a corporation, was appointed executor. The value of the estate was appraised at the sum of $1,402,295.43. The entire estate of the testator was left in trust to the Title Guarantee & Trust Company, a corporation, with directions to pay out of the income the bequests mentioned therein, as follows:

(A) Certain small bequests to various persons amounting to the sum of $1,200;

(B) To his widow, Alma M. Sargent, $3,000, in lieu of a family allowance; $50,000 to be paid in ten equal annual instalments; and $3,000 per year for life;

(C) To Maud S. Kelso, the sum of $5,000 and certain valueless notes;

(D) To Ethelyn Jones, $900 per year in equal monthly instalments for life, commencing January 1, 1918;

(E) To Gladys Carson Yoakum, $900 per year for life;

(F) To Reuben Daniels, $300 per year for life.

After the death of Ethelyn Jones, Gladys Carson Yoakum and Reuben Daniels the estate was to be distributed as follows:

To the children, the issue of Ethelyn Jones, in equal shares, one-sixth thereof;

To the issue, if any, of the body of Gladys Carson Yoakum, one-sixth thereof;

To Howard C. Sargent and Edwin L. Sargent, in equal shares, two-thirds thereof.

At the date of the death of the testator, Ethelyn Jones was 36 years of age; Gladys Carson Yoakum was 31 years of age; and Reuben Daniels was 75 years of age.

In considering the provisions of the instruments hereinafter referred to, and as an aid to the correct interpretation of paragraph IV of one of the contracts which we have set forth herein, the life-expectancy of at least two of the legatees, to-wit, Ethelyn Jones and Gladys Carson Yoakum, must be taken into consideration. The appellants in this action were not to receive any of the estate until after these two legatees, together with Reuben Daniels, should have passed away. Reuben Daniels being 75 years of age, his life-expectancy need not be considered. The youngest of the three, however, was only 31 years of age, which would give her a life-expectancy of between 30 and 40 years.

We have not found in the record any statements of the ages of the appellants in this action, but from what we have said, the probabilities of their receiving any portion of the estate during their lives was not only contingent, but considerably problematical. While appellants argue that they were giving away something, we make the foregoing statement to show that by the agreements entered into, they were receiving a very large present benefit in foregoing a larger contingent sum of money that might never be received.

In addition to what we have said, action was begun by one of the parties to contest the will of the deceased which, had it been successful, would have deprived the appellants of any portion thereof.

The parties named herein, save as to the plaintiff, not being satisfied with the terms of the will, had a conference on or about the 8th day of March, 1930, for the purpose of agreeing upon a distribution of the estate, to the intent and purpose that by the appellants waiving a portion of their contingent interest, they would receive a definite sum immediately upon distribution, and the other parties to the agreement would receive, as it appears, a sum of money, or a portion of the estate in excess of that portion of the estate which they were to receive under the terms of the will. The plaintiff not being a party to the first agreement, subsequently entered into an agreement which contained the contested paragraph IV which we have quoted.

The agreement of March 8, 1930, provided for the following distribution of the estate (omitting small items not necessary to mention):

To Alma M. Sargent, 4/24ths; to Gladys Carson Yoakum, 3/24ths; to Ethelyn Jones, 3/24ths; to Howard C. Sargent and Edwin L. Sargent, 14/24ths in equal shares.

On July 28, 1930, a certain instrument in writing was entered into between the parties herein named, by virtue of which agreement the plaintiff, Maud Sargent Kelso was to receive $45,000 in addition to the $5,000 given her by will, and provided for the dismissal of the litigation which she had instituted. In this agreement the quoted paragraph IV appears.

On June 20, 1931, a third contract was entered into, under the terms of which the respective parties placed in escrow with the Title Guarantee & Trust Company certain shares of stock of the agreed value of $75 per share, for the purpose of indemnifying the Title Guarantee & Trust Company in payment of the inheritance taxes authorized to be paid in a previous agreement. Shares of stock were deposited as follows:

By Maud Sargent Kelso, 120 shares; Gladys Carson Yoakum, 282 shares; Ethelyn Jones, 276 shares; Alma M. Sargent, 405 shares; Howard C. Sargent, 853 shares, and by Edwin L. Sargent, 853 shares.

On May 6, 1931, the inheritance tax appraiser filed his report, and which report was subsequently approved by the court, fixing the inheritance tax chargeable against the

parties herein named, based upon the bequests made to them under the will, as follows, to-wit:

Maud Sargent Kelso, exempt; Ethelyn Jones, amount of tax, $135.16; Gladys Carson Yoakum, $37.09; Alma M. Sargent, $6,871.21; Howard C. Sargent, $63,964.66; Edwin L. Sargent, $63,964.66.

The inheritance taxes were fixed by the appraiser upon the value of their respective bequests as calculated by him, based upon the terms of the will.

Restating the controversy, it is insisted by the appellants that the plaintiff should be chargeable with the tax on $45,000 which she was to receive under the agreement; that Ethelyn Jones should pay an inheritance tax on 3/24ths of the estate, being the sum she was to receive under the agreement. Likewise, that Gladys Carson Yoakum should pay an inheritance tax upon 3/24ths of the estate which she was to receive under the agreement; likewise, that Alma L. Sargent should have paid an inheritance tax upon the portion of the estate which she was to receive under the agreement; that Howard C. Sargent should only pay a tax upon 7/24ths of the estate which he was to receive under the agreement; and that Edwin L. Sargent should only be chargeable with the amount of tax levied against 7/24ths of the estate which he was to receive under the agreement.

This argument is further based upon the assumption that the appellants, together with releasing their right to property of the value of $398,999.44, upon the tax which they claimed should be shifted from their shoulders to that of the other parties herein, amounted to the sum of $79,799.88. This contention would have some weight were it not for the fact that as we have shown herein, the appellants were not relinquishing any present interest; they were, in fact, getting present benefit of several hundred thousand dollars in lieu of awaiting termination of a contingency that might not occur in sufficient time to enable them to enjoy any portion of the estate.

The record shows that this cause was first tried, and all the testimony set forth in the transcript introduced at a hearing had before Honorable Albert Lee Stephens, one of the judges of the Superior Court of Los Angeles County, who, however, was appointed a judge of the District Court of Appeal for the Second District, and resigned as a judge

of the superior court prior to the rendition of any declaratory judgment herein. Thereafter, the testimony introduced in the hearing had before Judge Stephens having all been written up, by stipulation of counsel it was agreed that the cause might be heard before Honorable Thomas P. White, a judge of the said superior court, and that the testimony taken at the hearing presided over by Judge Stephens should be considered as reintroduced, read by Judge White, and by him decided. After consideration of the testimony, Judge White drafted findings and entered judgment fixing the rights of the parties, and decreeing that each one of the parties should pay an inheritance tax as fixed by the inheritance tax appraiser.

Upon the hearing had before Judge Stephens and in the testimony set forth and considered by Judge White, it appears that the appellants contended that the language of paragraph IV which we have set forth herein was ambiguous, and sought, as provided by section 1856 of the Code of Civil Procedure, to introduce oral testimony to explain such ambiguity and what the parties meant by the use of the language found in said paragraph. The other parties to the agreement contended that there was no such ambiguity, yet at the same time introduced testimony in support of the construction which was subsequently given by the court to the paragraph. The testimony so introduced shows that one of the witnesses testified to a conversation had after the contract was signed, in which the statement was made, "Everybody will pay on what he gets," which was afterwards changed to, "Everybody will pay their own taxes." Another witness testified as to the understanding of the statement to the effect that each one would pay on "what he gets".

Following the introduction of the oral testimony, a number of letters passed between the parties relative to the payment of taxes, which we do not deem necessary to set forth herein but a reading of which convinces us that if a finding was proper, as made by the court, as to the understanding of the agreement, there is sufficient testimony to support the conclusion arrived at by the court. However, we will set forth a portion of one letter which was written on December 17, 1930, prior to the filing of the report by the inheritance tax appraiser. This letter was addressed to one

of the attorneys for the appellants by Flint & MacKay, attorneys for the respondent, and is as follows:

"You will recall that the agreement provided that the inheritance tax, as fixed by the department, should be paid by the Title Guarantee & Trust Company and that the tax so fixed should be deducted by the executor from the sums to be received under the agreement. We believe that the Title Guarantee & Trust Company will be willing to pay the inheritance tax charged against each devisee under the terms of the will and that such amount so charged can be deducted from the amount such devisees receive under the agreement, or the decree of distribution based upon the agreement."

The reply to this letter by Mr. Berry, one of the attorneys for the appellants, does not appear to question the construction given to the contract by the attorneys for the respondent, as above mentioned.

■ The law is well settled that inheritance taxes are not charges upon the estate of a decedent, nor are such taxes considered as expenses of administration. The tax is levied upon each share of the decedent's estate which is by him devised or bequeathed to a legatee or which such person inherits when anyone leaves property, dying intestate. (24 Cal. Jur., p. 460; *Estate of Chesney*, 1 Cal. App. 30 [81 Pac. 679]; *Estate of Wilmerding*, 117 Cal. 281 [49 Pac. 181].)

Agreement among heirs cannot change the right of the state to the inheritance tax, nor does it change the basis upon which the tax is to be computed. (*Estate of Rossi*, 169 Cal. 148 [146 Pac. 430]; *Estate of Holt*, 61 Cal. App. 464 [215 Pac. 124].) Other cases might be cited, but the foregoing authorities we deem sufficient.

■ Paragraph IV, to which we have frequently referred, first authorizes the executor to pay, from any moneys in its hands, any and all estate and inheritance taxes, and then uses the following language: "and the specific inheritance tax chargeable against any devise or bequest received under said will, or this agreement, shall be paid by the executor, as aforesaid, but shall be deducted from the amount of such devise or bequest, or the amount received by such party under said agreement".

At the time this paragraph was written, the inheritance tax had not been fixed. It would seem that the draftsman of the paragraph was uninformed as to whether the tax

would be levied against the amount of the devise or bequest under the will, or would be levied against the respective portions of the estate which would be distributed to the various parties under the provisions of the agreements into which they had entered. Thus, it provides that if the tax is levied against the amount of the devise or bequest under the will, the executor should pay the same and subsequently deduct the amount of such tax from whatever property should be received by each one of the parties to the agreement, that is, each party to the agreement would have deducted from the amount which he would receive the amount of the tax charged against him on account of the property willed to him by the testator. Had the tax been levied against the respective portions as the property was to be distributed under the agreement, then the contention of the appellants might be supported. No such tax, however, was levied. The tax was simply levied according to the laws of the state of California, irrespective of the property that the various parties interested might, by agreement, divide among themselves.

In order to indemnify the executor, the respective parties placed in escrow certificates of stock which were to be returned to the respective parties in the number of shares to which they were entitled, not necessary to pay the inheritance taxes chargeable against the respective persons placing the certificates of stock in escrow.

We do not need to enter into a discussion of the inheritance tax charged by the inheritance tax appraiser to the contingent estates which, under the will, the appellants would have received in the event of the contingency taking place during their respective lives, and the argument of counsel that the appellants had no money with which to pay such taxes, other than to state that the circumstances surrounding the execution of the respective instruments appear to be beneficial to all parties concerned, in that a present enjoyment was insured in lieu of a future contingency.

Following the conclusion of the hearing of this cause before Judge Stephens, appellants, in their brief, set forth that a memorandum of opinion was filed by him to the effect that the inheritance tax should be apportioned according to the amounts received under the agreement, and not as fixed by the inheritance tax appraiser. This memorandum is no

part of the transcript, and of course cannot be given any consideration by us. The stipulation of counsel for the hearing of this cause before Judge White we think conclusive.

In the final brief submitted by the appellants, much attention is given to chapter 8 of the Code of Civil Procedure relating to declaratory relief. The pleadings in this cause called for a declaration of rights of the parties which embraced slightly more than a construction of the contract. While it is true that the complaint filed by the plaintiff only went to the construction of the contract, and asked for the return of certificates of stock placed in escrow by her, the pleadings filed by the defendants went somewhat further, and we think justified the trial court in not only construing the provisions of paragraph IV, but also justified the court in declaring the rights of the parties under the contract, to-wit: The amount of the inheritance tax which each one of the legatees should pay, as fixed by the inheritance tax appraiser, as well as the return of certificates of stock to each one, which might be in excess of the number of shares required to discharge the tax chargeable against the specific legatee placing the same in escrow.

Appellants also in their final brief discussed at length the question as to what should be the form of a declaratory judgment, and that findings are not necessary, and that the judgment entered should be entered in a peculiarly declaratory form, without reference to the procedure usually followed in the trial of civil actions before a court sitting without a jury. While we are inclined to agree with appellants in this particular, a decision or an opinion thereon appears to be unnecessary. The judgment in this case, while not in a declaratory form, is in substance and effect a fixing not only of the rights of the respective parties, but a determination of the construction which should be given to paragraph IV relative to the payment of inheritance taxes. Being correct in substance, errors in form we consider immaterial.

While the briefs filed by respective counsel have taken a very wide range, what we have set forth herein we think determinative of this cause.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 9, 1936.