36 Cal.App.3d 909 (1974)
112 Cal. Rptr. 50
Estate of CLARA W. KRUSE, Deceased.
HOUSTON I. FLOURNOY, as State Controller, Petitioner and Appellant,
v.
SECURITY PACIFIC NATIONAL BANK, as Trustee, etc., Claimant and Respondent.
Docket No. 40368.
Court of Appeals of California, Second District, Division Five.
January 23, 1974.
*911 COUNSEL
Myron Siedorf, Walter H. Miller and Martin Moses for Petitioner and Appellant.
George C. Woods and Charles F. Howard for Claimant and Respondent.
OPINION
HASTINGS, J.
This is an inheritance tax case. The appellant is the State Controller, Houston I. Flournoy (Controller). The respondent is the Security Pacific National Bank as the trustee of the Kruse estate (Trustee). Controller appeals from a judgment (order) of the trial court modifying an earlier order fixing the inheritance tax and directing payment of a tax refund to the trustee. We affirm.

*912 FACTS
Clara Kruse died in January 1959, leaving a holographic will, which was probated. A trust was established under the will. The order for preliminary distribution of the estate,[1] filed in December 1959, provided in relevant part for the distribution of the estate as follows:
(1) Roy Kruse, the husband, a life estate, consisting of 50 percent of the net income of the trust.
(2) Russell Kruse, the son, a life estate, consisting of 50 percent of the net trust income.
(3) The assets of the trust were to be distributed to Russell Kruse when he reached certain ages: 10 percent at age 40, which event had occurred by the time of the preliminary distribution; 15 percent at age 45; 20 percent at age 50; 50 percent at age 55, and the remainder at age 60.
(4) The trust would terminate earlier on the death or remarriage of the husband and the death of the son before age 60. The remaining trust estate was then to be equally divided among Clara Kruse's surviving blood relatives, who, at the time the inheritance tax was determined in January 1960, consisted of, besides the son, two grandchildren, two nieces, one nephew and one grandnephew. If no blood relatives survived, the remaining trust estate would be distributed to specified charities.
The taxable estate totaled about $854,000. Excluding certain small bequests, the order fixing inheritance taxes, filed in January 1960, taxed the interest of the son, assessed at approximately $714,000, in the amount of $58,611.49.
The husband died in February 1967. The son died in November 1970, at age 54, leaving 65 percent of the trust estate. This amount was then distributable to the six blood relatives, all still living. His early death meant that in retrospect the tax had been fixed at too high a figure.
In March 1971, Trustee filed a petition for an order modifying the inheritance taxes under section 13411 of the Revenue and Taxation Code.
In December 1971, the trial court issued an order modifying the original order fixing inheritance taxes and directing the payment of a tax refund in the amount of $15,587.41 to Trustee.

*913 DISCUSSION
Section 13411 of the Revenue and Taxation Code provides as follows:[2] "(a) In the case of a transfer made subject to a contingency or condition upon the occurrence of which the right, interest, or estate of the transferee may, in whole or in part, be created, defeated, extended, or abridged, the tax is computed as though the contingency or condition has occurred in such manner as to produce the highest rate of tax possible.
"(b) Upon the occurrence of the contingency or condition after an order fixing inheritance tax has been entered in which the tax was computed at the highest rate possible pursuant to this section, the court which made the order shall, upon petition after notice to the Controller, modify said order to fix the tax due in accordance with the occurrence of the contingency or condition. The petition shall be filed within six months after the occurrence of the contingency or condition."

CONTENTIONS ON APPEAL
Trustee's and the trial court's arithmetic is not disputed; Controller simply contends that Trustee is not entitled to any tax refund because the tax was not assessed under section 13411 of the Revenue and Taxation Code. The rationale for this contention is that had said section been applied, Controller would have been required to assess the tax at the highest rate possible, which would have been to tax the entire remainder to a surviving single niece or nephew.[3] The tax on this basis would have been approximately $89,000, instead of $58,611.49.
*914 Controller claims that the probate court, in fixing the tax, treated the remainder as vested in the son, Russell, and did not treat it as a transfer subject to a contingency. There is no specific finding to that effect. Controller merely bases this allegation on the order fixing inheritance tax that lists the value of the interests plus the tax due, without further explanation.
Trustee, on the other hand, counters Controller's contention with a specific finding of the presiding judge of the probate court, filed in conjunction with its order directing payment of the refund. The finding is as follows: "The amount of inheritance taxes determined, fixed and paid on the transfer to the son, RUSSELL W. KRUSE, was computed without allowance for the above stated contingency[4] upon the taking effect of which the interest of said transferee was, in part, defeated and diminished and was computed upon the contingency which produced the highest rate of tax possible, by charging to the son, RUSSELL W. KRUSE, the entire value of the remainder of residue of the decedent's estate."
We interpret this to mean that the transfer to Russell was valued without allowance for the contingency that he might not live to the age of 60, and, therefore, that the tax was computed upon the calculated expectancy of that which would produce the highest rate of tax.[5]

ARGUMENT
(1a) Controller claims the tax was not computed at the highest rate and offers the following theory to support his contention. As stated earlier, this would have required all of the tax to have been levied against a niece or nephew who was the lone survivor of six blood relatives. To achieve this result, the following must happen: Russell must die before age 45 (he was 43 when his mother died),[6] and decedent's granddaughter, grandson, and all but one of two nieces, a nephew and a grandnephew must die before Russell would have reached that age. Thus, the substance of Controller's argument is that because this formula was not used in computing the tax, it follows that it was not assessed under section 13411; therefore, Trustee cannot qualify for the refund allowed by the section.
*915 Revenue and Taxation Code section 14501 requires the appointment of an inheritance tax referee (called appraiser in 1959) who shall determine "[t]he amount of tax, if any, which is due and payable on each transfer." (See also § 14506.) Section 13411 (supra) requires the fixing of the tax "in such manner as to produce the highest rate ... possible."
(2) Certainly, an executor or administrator has the right to assume that the inheritance tax appraiser has carried out his duties as required by law and is not forced to contest the tax amount to ascertain if this has been done.[7]
The clerk's transcript indicates that when the inheritance tax report was prepared by the appraiser, Controller had all the information needed to petition the court to fix the tax on the remainder at the highest possible rate. There was, however, no protest filed by Controller; indeed, at oral argument before this court it was conceded that the forms were prepared by Controller and the tax computed by him. Also conceded was the fact that no hearing was held as permitted by Revenue and Taxation Code section 14502.[8]
To adopt the contentions of Controller would be to allow the tax to be fixed (without there being a compromise between the estate and Controller) at a sum less than the maximum, and thereby bar the estate from the refund allowed in section 13411. This, in effect, would approve of (1) a violation of statutory duty and (2) a voidance of the provisions of the statute.
(3) It is obvious Controller fixed the tax at what he believed was the maximum (reasonable) tax. He manifestly did so in rationally applying the facts (longevity) to the case. It is commonly recognized that a vested construction is preferred to a contingent one, and that a construction in favor of early vesting is preferred to one involving a later time of vesting. (See Simes, Handbook of the Law of Future Interests (2d ed. 1966) § 91, p. 189; also, 2 Rest., Property, § 157, com. r.) Russell's interest was vested subject to being divested. (See Estate of Ferry, 55 Cal.2d 776, 783 [13 Cal. Rptr. 180, 361 P.2d 900, 90 A.L.R.2d 300].) This construction is consistent with the trial court's finding in granting the refund and places the computation under section 13411.
*916 There is no California case involving this precise situation. New York appears to find an estoppel in a similar situation (e.g., In re Moore's Estate (1934) 160 Misc. 265 [289 N.Y.S. 855, 856]). (4) California recognizes that the government may be estopped in tax matters where justice and right require it. (Driscoll v. City of Los Angeles, 67 Cal.2d 297, 307 [61 Cal. Rptr. 661, 431 P.2d 245]; U.S. Fid. & Guar. Co. v. State Bd. of Equal., 47 Cal.2d 384, 388-389, and cases there collected; see, generally, 28 Am.Jur.2d, Estoppel and Waiver, §§ 122-133, pp. 782-802; 31 C.J.S., Estoppel, §§ 138, 147, pp. 675-690, 729-733.)
(1b) It is inequitable to permit Controller, after participating in the calculation of the tax and accepting payment thereof, to deny the refund on the ground that the tax was not high enough because it was undercalculated and not contested by Trustee. This is particularly true when the theory used to prove the undercalculation is unrealistic, and the estate actually paid taxes in excess of those now determined to be owing.[9] (5) It is well established that the interpretation of tax statutes must, in all cases be reasonable. No construction should be given to a statute that would make its application impracticable, unfair or unreasonable. "`Revenue or taxation acts are not to be approached with a spirit of hostility and with a purpose of ignoring the intention of the legislature.... The interpretation of tax statutes must in all cases be reasonable. [Citation.]'" (Estate of Rath, 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].)
The tax, as urged by Controller, could not have been within the intent of the Legislature when it enacted section 13411, subdivisions (a) and (b), and the superseded sections. Testamentary and inter vivos trusts abound with contingent interests. It is evident that the Legislature realized that inheritance and gift taxes often would be difficult to determine because of conditions precedent and subsequent to taxable interests. It is implicit from the overall scheme of the sections involved that the Legislature established a procedure for taxation with refunds that would have an end result of fairness to the taxpayer and the state. In this sphere of taxation, often the correct tax is not known until the contingencies have occurred that allow its final determination. Each case must be considered and finalized on its own particular facts. The fertile and creative minds of testators and estate planners create a modern-day "Pandora's box" in this field, and mechanical formulas are often inadequate. We are convinced that *917 to give viability and function to said sections they must be applied with reason to each fact situation.
Controller relies primarily on In re Estate of Harding,[10] 388 Ill. 598 [58 N.E.2d 524, 158 A.L.R. 210], but we do not consider it controlling for several reasons. The contingent remaindermen and the nature of the contingencies are not spelled out. The court did not consider, as we do here, the applicability of the higest tax theory to a given set of facts. Also, there is no intervening precedent vested interest such as there is here. The children's interests were not subject to a condition precedent that the vested remaindermen would not survive the termination of the trust.
(1c) We conclude that the facts justify the trial court's finding that Controller assessed the inheritance tax under section 13411. Further, for the reasons stated, Controller is estopped from challenging the theory of the tax assessment made in 1960 for the purpose of defeating Trustee's right to the refund.
The order modifying the inheritance tax and directing payment of the tax refund to Trustee is affirmed.
Stephens, Acting P.J., and Ashby, J., concurred.
A petition for a rehearing was denied February 21, 1974, and appellant's petition for a hearing by the Supreme Court was denied April 10, 1974.
NOTES
[1] The order settling the final account and for distribution, filed in May 1960, ordered distribution in accordance with the terms and conditions of the decree of preliminary distribution.
[2] The petition for an order modifying the order fixing inheritance taxes was filed under section 13411, subdivisions (a) and (b). The applicable Revenue and Taxation Code sections were amended, renumbered, or repealed after Clara Kruse died. Despite Trustee's reference in the petition to the current version of section 13411, the parties agree that the sections as they existed in 1959 control. The parties also agree that none of the changes affect the substance of the rights involved.

The refund provision, now contained in section 13411, subdivision (b), formerly was contained in section 1411, now repealed. When we refer to section 13411, subdivision (b), we include repealed section 1411.
[3] The parties agree that the entire value of the trust estate remainder was taxed to the son. The son was a "Class A" transferee (§ 13307) and taxable at rates in 1959 from 2 to 10 percent, the rate increasing with the size of the estate (§ 13404 [Stats. 1943, ch. 658, § 1, p. 2299; amended, Stats. 1967, ch. 963, § 12, p. 2475]). The nieces and nephews were "Class B" transferees (§ 13307) and taxable in 1959 at rates from 5 to 15 percent (§ 13405 [Stats. 1943. ch. 658, § 1, p. 2299, amended. Stats. 1967, ch. 963, § 13, p. 2475]). Thus, a higher rate would be obtained if nieces and nephews rather than the son or grandchildren survived, and the highest rate would be obtained if only one niece or nephew remained, because the rate increases as the amount of the transfer increases. There was also a grandnephew who is a "Class B" transferee and is therefore referred to by Controller as a nephew.
[4] This contingency is set forth, in part, as follows: "... the remaining balance of the trust estate shall be distributed to the said RUSSELL W. KRUSE as follows: 15% of the total remaining assets of the trust estate when he attains the age of 45 years, 20% of the remainder when he attains the age of 50 years, 50% of the remainder when he attains the age of 55 years, and all the remainder when decedent's said son attains the age of 60 years."
[5] This finding would be consistent with the requirements of section 13411.
[6] This is necessary in order to tax the entire interest to the last survivor, because a partial distribution would pass to Russell at age 45, which would diminish the balance of the remainder and reduce the taxable estate.
[7] Revenue and Taxation Code section 14509 provides 10 days for filing objections to the report. This, however, does not place a duty on the representative of the estate to determine if the appraiser has performed his duties properly.
[8] This section empowers the appraiser to hold hearings that will aid the appraiser or the court in the determination of the tax, and is often done when unusual situations exist.
[9] Under the circumstances of this case, Trustee would have the same right of refund as he now seeks. The only difference would then have been the state's obtaining the use of a larger sum for the intervening period, 1967-1971.
[10] Harding appears to be the only case dealing with this problem of a refund sought after an erroneous computation. Other cases involve applications of the highest possible tax rule. (See, e.g., In re Morton's Estate (1947) 396 Ill. 594 [72 N.E.2d 809, 811-812] (trial court order granting reassessment affirmed because tax paid at highest possible rate); In re Shaw's Estate (1943) 351 Mo. 1151 [175 S.W.2d 588, 589, 151 A.L.R. 916] (trial court order affirmed taxing estate as single entity where residual beneficiaries were four nieces and nephews); In re Rice's Estate (1925) 164 Minn. 139 [204 N.W. 543] (trial court order reversed where contingent remainder not taxed at highest possible rate); Wonderly v. Tax Commission (1925) 112 Ohio St. 233 [23 Ohio L.R. 111, 147 N.E. 509, 510] (trial court order taxing remainder to brothers and sisters rather than to son affirmed); In re Parker's Estate (1919) 226 N.Y. 260 [123 N.E. 366, 367] (trial court order reversed where contingent remainder not taxed against nephew); In the Matter of Estate of Coyle (1954) 97 Ohio App. 458 [54 Ohio Ops. 292, 122 N.E.2d 115, 117-118] (trial court order fixing taxes reversed because interests of nieces and nephews in remainder not considered).