[Civ. No. 49253. Second Dist., Div. Five. June 14, 1977.]

Estate of DOROTHY B. KOPLIN, Deceased.
KENNETH CORY, as State Controller, et al.,
Petitioners and Respondents, v.
BRENDA KOPLIN, Objector and Appellant.

## COUNSEL

Volk, Newman, Marsh, Gralla & Karp and James H. Karp for Objector and Appellant.

Myron Siedorf, Margaret Groscup and Phyllis K. Fairbanks for Petitioners and Respondents.

## OPINION

**STEPHENS, J.**—This is an appeal from an order overruling appellant's objections to the report of the inheritance tax referee and fixing inheritance tax based on a special power of appointment which the objector-appellant had disclaimed in writing prior to the filing of said report. The order was based on the court's finding that appellant's disclaimer had not been filed "within a reasonable time after the disclaimant acquired knowledge of the interest." Appellant (Brenda Koplin, a.k.a. Brenda Resos) is the daughter of decedent Dorothy B. Koplin. The sole issue is whether the trial court erred in its determination that appellant's disclaimer of the power of appointment granted to her in her parents' declaration of trust was untimely.

### The Facts

The relevant facts found by the court are as follows:

"I. On September 13, 1967, Dorothy B. Koplin, decedent herein, and Harry Koplin, her surviving spouse, executed and entered into Wills and a revocable inter vivos trust entitled the 'Harry and Dorothy B. Koplin Family Trust,' the assets of which were community property."

"III. Soon after execution of said Wills and Trust, [appellant] was informed by decedent and Harry Koplin that she and her children were taken care of under the Wills and Trust.

"IV. Decedent died on February 11, 1974.

"V.· Said Trust was still in existence at the date of decedent's death.

"VI. On the date of decedent's death [appellant] was aware that she was granted a beneficial interest under decedent's Will and said Trust, but had not seen either document nor did she have knowledge of the specific beneficial interest granted. She had no knowledge that she was granted a power of appointment under the trust until April 1975.

"VII. On or about February 26, 1975, Paul Adcock, State Inheritance Tax Referee, forwarded to the attention of Peter Greenfield,[1] a Notice and Determination of Inheritance Tax taxing a life estate and power of appointment, having a new value of $411,032.06, to said [appellant], which amount when combined with the value of $34,121.72 ascribed to an insurance policy, resulted in a tax to her in the amount of $40,921.53.

"VIII. On or about April 9, 1975, a superseding Notice and Determination of Inheritance Tax was forwarded to Peter Greenfield providing for the same values and taxes due.

"IX. Thereafter, during April 1975, said [appellant] was informed and became aware for the first time that she received a power of appointment under the terms of said Trust and was informed of the tax consequences thereof.

"X. On April 22, 1975, said [appellant] served upon the Trustees and upon Paul Adcock, as Inheritance Tax Referee, her declaration disclaiming the power of appointment as granted in said Declaration of Trust."[2]

---

[1] Greenfield is not otherwise identified in the findings. On page 5 of appellant's opening brief Greenfield is identified as "an agent of decedent's husband"; however, on page 6 of respondents' brief, respondents claim "There is no evidence to support this contention."

[2] The relevant provisions of the declaration of trust executed on September 13, 1967 establishing the Harry and Dorothy Koplin Family Trust are as follows:

"DISTRIBUTION OF INCOME AND PRINCIPAL

. . . . .

"(B) Upon the death of either Trustor, the Trustees shall divide the trust estate into two equal parts, to be designated respectively as 'TRUST A' and 'TRUST B'. Each part

From the foregoing findings, the court concluded: "I. Said disclaimer was not filed within a reasonable time after the disclaimant acquired knowledge of the interest. II. The Objections to Report of Inheritance Tax Referee are hereby overruled. III. The Report of the Inheritance Tax Referee is true and correct."

### Contentions

Appellant contends:

"(1) The judgment fixing the report of the inheritance referee cannot be sustained as a matter of law by reason of appellant's disclaimer of the

---

shall constitute a separate trust, and shall be held and administered as such.

TRUST A shall be comprised of the deceased's Trustor's one-half interest in the community property of the trust estate, and TRUST B, the survivor's one-half interest in such property.

". . . . If HARRY KOPLIN survives DOROTHY B. KOPLIN, then the net income from TRUST B shall be paid to him in monthly or other convenient installments during his lifetime. He shall also be entitled to such amounts of the net income and principal of TRUST A as may be necessary in the discretion of the Trustee, other than himself, for his proper support, care, comfort and medical attention, taking into consideration his income from all sources. Net income of TRUST A not paid to him shall be accumulated and added to the principal of that Trust.

"(C) Upon the death of the last to die of the Trustors, the trust estates of TRUST A and TRUST B shall be combined to form one trust for the following uses and purposes:

"(1) The net income of the trust shall be paid in monthly or other convenient installments to the Trustors' daughter [appellant], during her lifetime.

"(2) [Appellant] shall also be entitled to such amounts of the principal of the trust as may be necessary in the discretion of the Trustee, other than she, for her proper support, care, comfort and medical attention, taking into consideration her income from all sources, but in no event shall such principal payments exceed the sum of Twenty Thousand Dollars in any one year except that if in the discretion of the Trustee, other than she, additional sums are needed for her proper medical care, then amounts in excess of such limitation may be expended for that purpose.

"(3) [Appellant] shall have a testamentary power to appoint the trust estate equally or otherwise, outright or in trust, among her children and more remote issue, by a valid Will specifically referring to and exercising this power. If and to the extent such power is not effectively exercised by [Appellant], then upon her death the Trustees shall divide the trust estate into equal parts and shall set aside one such part for each then living child of [appellant], and one such part for each then deceased child of [appellant] who shall have left one or more issue then living. Each part so set aside for the issue of a deceased child shall be further divided into parts so that there shall be one part set aside for each of such issue per stirpes. Each part shall be held as a separate trust for the benefit of that child or other one of her issue for whom so set aside . . . ."

"(4) If [appellant] is not living upon the death of the last to die of the Trustors, the combined trust estate shall be divided upon the death of the surviving Trustor under the above provisions as if [appellant] had failed to exercise any part of her testamentary power of appointment."

### "NATURE OF THE TRUST
"(B) . . . .Upon the death of either Trustor, the survivor may revoke or amend TRUST B in whole or in part, but TRUST A shall be unamendable and irrevocable."

special power of appointment having been timely filed in accordance with Probate Code section 190.3."[3]

Appellant urges that her interest in the special power of appointment was not "indefeasibly fixed" under the proper construction of Probate Code section 190.3, subdivision (a)(3), so as to support a finding by the trial court that her disclaimer was untimely as a matter of law.[4] Section 190.3, subdivision (a)(3), provides in pertinent part: "(3) In case of interests created by inter vivos trusts, [a disclaimer is conclusively presumed timely if made] within nine months after the interest becomes *indefeasibly fixed.*" (Italics added.) She contends that an interest which is "indefeasibly fixed" is an interest which is "indefeasibly vested"—that is, a vested interest which is not subject to any kind of divestiture of quality

---

[3]Probate Code, section 190.3 (as it read prior to the 1976 amendment):

"A disclaimer to be effective shall be filed within a reasonable time after the person able to disclaim acquires knowledge of the interest.

"(a) Except as otherwise provided in subsection (c), a disclaimer shall be conclusively presumed to have been filed within a reasonable time if filed as follows:

"(1) In case of interests created by will, within nine months after the death of the person creating the interest. Interests resulting from the exercise or nonexercise of a testamentary power of appointment shall be deemed created by the donee of the power for purposes of this chapter.

" . . . . . . . . . . . . . .

"(3) In case of interests created by inter vivos trusts, within nine months after the interest becomes indefeasibly fixed. Interests resulting from the exercise or nonexercise of a nontestamentary power of appointment shall be deemed created by the donee of the power for purposes of this chapter.

"(4) In other cases, within nine months after the first knowledge of the interest is obtained by a person able to disclaim.

"(b) If the disclaimer is not filed within the time set forth in subsection (a), the disclaimant shall have the burden to establish the disclaimer was filed within a reasonable time after he acquired knowledge of the interest.

"(c) A disclaimer shall be conclusively presumed not to have been filed within a reasonable time after the person able to disclaim acquired knowledge of the interest if:

"(1) An interest in the property which is in whole or in part sought to be disclaimed has been acquired by a purchaser or encumbrancer for value subsequent to or concurrently with the creation of the interest sought to be disclaimed and prior to such disclaimer, and

"(2) One year has elapsed from the death of the person dying intestate or creating by will the interest sought to be disclaimed, or from the date of the transfer by inter vivos gift, whether outright or in trust."

[4]Appellant also asserts:

"B. The disclaimer was made within nine months after appellant acquired first knowledge of the interest and is therefore timely under Probate Code section 190.3(4);

"C. The disclaimer was made and filed within a reasonable time after appellant acquired knowledge of the interest. Probate Code section 190.3(b).

"D. The presumption against timeliness as provided in Probate Code section 190.3(c) does not apply as against appellant."

For reasons which are apparent from a reading of this opinion, we need not reach *these issues.*

or quantity. Appellant reasons that since her interest in the special power of appointment is subject to divestiture, the nine-month period provided for under section 190.3, subdivision (a)(3), could not begin to run against her until the preceding life estate held by her father had come to an end. She concludes that since this has not yet occurred her disclaimer must be conclusively presumed to have been filed within a reasonable time as a matter of law. Respondent, of course, adamantly disagrees, contending that an "indefeasibly fixed" interest is an interest which has simply vested. He analyzes appellant's interest in the special power of appointment as vested but subject to total divestment, and properly within the statute. He concludes that since appellant's disclaimer was not within the required nine-month period provided under Probate Code section 190.3, subdivision (a)(3), she cannot properly avoid the inheritance tax under the terms of Revenue and Taxation Code section 13409.[5]

Two major issues of law are raised from these contentions: first, what is the nature of an "indefeasibly fixed" interest as described under the terms of section 190.3, subdivision (a)(3) (which is an issue of first impression); second, does appellant's interest in the special power of appointment as described in the declaration of trust properly fall within that category.

Since the trial court reached its judgment by applying its construction of section 190.3, subdivision (a)(3), to the evidence, the above issues of law are properly before us. (Prob. Code, § 1240; Code Civ. Proc., §§ 904.1 and 906.) However, since the facts are not in dispute and since this is an appeal on the clerk's transcripts alone, we must presume that there was sufficient evidence to support the trial court's findings of fact. (*Guardianship of Walters* (1951) 37 Cal.2d 239, 251-252 [231 P.2d 473]; *Ducray* v. *Ducray* (1967) 257 Cal.App.2d 480, 483 [64 Cal.Rptr. 825]; *Williams* v. *Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479, 482-483 [33 Cal.Rptr. 289].)

---

[5]Revenue and Taxation Code section 13409: "Transfers of any interest in real or personal property and all rights and powers relating to the same which have been duly disclaimed pursuant to the provisions of Chapter 11 (commencing with Section 190) of Division 1 of the Probate Code or in any other valid manner, shall be subject to the inheritance tax only if, and to the same extent and in the same manner as the same would have been subject to such tax if such interest, rights and powers had been originally created in favor of and transferred to the same persons and in the same shares in which they are effectively distributed or otherwise disposed of, after giving full effect to such disclaimers pursuant to the governing instrument, if any, and Chapter 11 (commencing with Section 190) of Division 1 of the Probate Code and all other applicable law."

*Discussion*

I

■ Nowhere in chapter 11 (eff. Aug. 16, 1972) is the term "indefeasibly fixed" equated with the term "indefeasibly vested," as appellant contends. Yet, we are convinced that the Legislature intended that the courts construe the terms as synonymous. In the 1976 legislative session, chapter 11 was amended for the apparent purpose of clarifying former section 190.3. As amended, section 190.3, subdivision (a)(3), now reads in pertinent part: "In case of interests created by inter vivos trusts, [a disclaimer is conclusively presumed timely if made] within nine months after the interest becomes *indefeasibly vested.*" (Italics added.) Section 190.9 was at the same time amended as follows: "Any interest created prior to the effective date of this chapter which has not been accepted, may be disclaimed on or after *August 16, 1972* in the manner provided herein; provided, however, that no interest which has arisen prior to the effective date of this chapter in any person other than the beneficiary, shall be destroyed or diminished by any action of the disclaimant taken pursuant to this chapter." (Italics added.) Our reading of this latter section indicates to us that the Legislature at least intended that section 190.3, as amended in 1976, have a limited retroactive effect back to August 16, 1972, in cases where the power has not already been exercised by the donee. Accordingly, for purposes of this case, we construe "indefeasibly fixed" to mean "indefeasibly vested." (See *Standard Oil Co.* v. *Johnson* (1944) 24 Cal.2d 40, 48 [147 P.2d 577]; *W.R. Grace and Co.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 720, 729 [151 P.2d 215]; *Fahey* v. *City Council* (1962) 208 Cal.App.2d 667, 675-676 [25 Cal.Rptr. 314]; *Koenig* v. *Johnson* (1945) 71 Cal.App.2d 739, 755 [163 P.2d 746].)

■ We cannot doubt that the Legislature has wide discretionary powers to determine under what circumstances transfers of interests are to be subject to inheritance taxation. (*Estate of Elston* (1939) 32 Cal.App.2d 652, 658-659 [90 P.2d 608].) ■ The Legislature obviously recognizes that public policy is best served by allowing a beneficiary to make a disclaimer of his interest at that point in time where the beneficiary is best able to weigh the alternate possibilities of his actions. That point is not necessarily reached upon the creation of an inter vivos trust or at the death of the settlor. Moreover, to accept respondent's interpretation of section 190.3, subdivision (a)(3), would mean that an unborn beneficiary of an interest created under an inter vivos trust could

never as a practical matter be in a position to make a timely disclaimer. ■ It is the duty of the court to interpret statutes which bear upon the ultimate assessment of inheritance tax in a reasonable manner, and not one that would make the statutes' application impractical, unfair, or unreasonable. (*Riley* v. *Gordon* (1934) 137 Cal.App. 311, 318 [30 P.2d 617]; *Estate of Rath* (1937) 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].)

■ The above interpretation of section 190.3 is in conformity with the prevailing federal law. Under 26 United States Code Annotated section 2511(a) (I.R.C. 1954), the holder of an interest subject to divestiture has a reasonable time within which to disclaim his interest once it becomes free from the possibility of that divestiture. (See also *Keinath* v. *C. I. R.* (8th Cir. 1973) 480 F.2d 57.) It also comports with the Model Act to Provide for Disclaimer of Succession to Real and Personal Property proposed by the American Bar Association.[6]

## II

■ It is a well established principle of law in California that a vested construction is preferred to a contingent one, and that a construction in favor of early vesting is preferred to one involving a later time of vesting. (*Estate of Kruse* (1974) 36 Cal.App.3d 909, 915 [112 Cal.Rptr. 50]; *Estate of Ferry* (1961) 55 Cal.2d 776, 783 [13 Cal.Rptr. 180, 361 P.2d 900, 90 A.L.R.2d 300].) Words of futurity are best construed as deferring possession rather than postponement of vesting of title. (*Bochte* v. *Chess* (1954) 124 Cal.App.2d 321, 325 [268 P.2d 493].) ■ Nevertheless, even if we do conclude that appellant's interest in the special power of appointment vested at the creation of the trust or at the death of the settlor, her disclaimer pursuant to section 190.3, subdivision (a)(3) was still timely. Section 190.3, subdivision (a)(3) requires that the interest be "indefeasible" as well as "vested" before the nine-month qualifying period set forth in the statute can be triggered. ■ It is the duty of the court to construe all language and provisions of a statute together, giving significance to every word, phrase, sentence and part of an act in

---

[6]The model act, in pertinent part, reads as follows: "Time and Place of Filing. The disclaimer instrument shall be filed within 10 months after the death of decedent or the donee of the power, as the case may be, or if the taker of the property or interest is not then finally ascertained or his interest has not become indefeasibly fixed both in quality and quantity, then not later than 10 months after the event when the taker has become finally ascertained and his interest has become indefeasibly fixed both *in quality and in quantity.*"

pursuance of legislative purpose. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ It cannot be seriously doubted that appellant's interest in the special power of appointment is, at present, less than "indefeasibly vested." ■ An "indefeasibly vested" interest is one that has vested in title and that is not subject to divestiture in quantity or quality upon the failure of a possessory condition. (See *Estate of Ferry, supra,* at p. 783; *Estate of Kruse, supra,* at pp. 915-916; *Estate of Zuber,* 146 Cal.App.2d 584, 592-593 [304 P.2d 247]; *Leonardini* v. *Wells Fargo Bank & Union Trust Co.,* 131 Cal.App.2d 9, 16 [280 P.2d 81, 49 A.L.R.2d 1085]. See also Simes & Smith, The Law of Future Interests (2d ed. 1956) § 575, p. 8.)

■ Appellant's right to possession and enjoyment of the special appointment power, as provided in the declaration of trust, is conditioned upon her surviving her father, the holder of the present life estate. If she fails to survive him, the power will never come into existence, and the trust corpus is then to be distributed to appellant's heirs at law, per stirpes. (See declaration of trust, paragraphs (C)(3); (C)(4); (D).)

It is also subject to total divestment in one other respect. According to the terms set forth in the declaration of trust, paragraph (B), Trust A is subject to invasion of principal for the "proper support and maintenance" of appellant's father, while Trust B is wholly revocable by appellant's father during his lifetime. Appellant's interest does not arise until Trust A and Trust B combine upon her father's death. It is conceivable that appellant could survive her father and yet take nothing. The corpus from Trust A could be completely exhausted for the "proper support and maintenance" of appellant's father, while Trust B could simply be revoked by him. In such an event, the two trusts would cease to exist and clearly could never combine.

Under these circumstances, we must conclude that appellant's disclaimer which she filed pursuant to Probate Code section 190.3, subdivision (a)(3), was timely as a matter of law. In view of this conclusion, we need not discuss any of the other points of contention raised by appellant in her briefs.

However, to ensure that our ruling will be taken in its proper perspective, we must make one caveat: What we have said today is not to be interpreted as having a limiting effect on Revenue and Taxation Code

section 13411, subdivision (a), which provides in substance that in cases where an inheritance tax transfer is subject to a contingency or condition, the inheritance tax is to be computed as though the contingency or condition has in fact occurred, and in a manner producing the highest rate of taxation. ■ The power of the Controller to make the tax assessment, as opposed to the power of the beneficiary to disclaim, vests at the death of the transferor. (*Estate of Thurston* (1950) 36 Cal.2d 207, 214 [223 P.2d 12]; *Estate of Sisk* (1969) 269 Cal.App.2d 823, 835 [75 Cal.Rptr. 549].) ■ If a disclaimer is timely filed pursuant to Probate Code section 190.3, after an inheritance tax has been assessed and paid, the disclaimant or his successor can simply file for a tax refund with the Controller, per the authority of Revenue and Taxation Code section 13411, subdivision (b). (See *Estate of Kruse, supra,* at p. 916.)[7]

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.

---

[7]We have examined additional cases cited at oral argument (*Estate of Rossi,* 169 Cal. 148, 149 [146 P. 430]; *Kelso* v. *Sargent,* 11 Cal.App.2d 170, 177 [54 P.2d 26]; *Estate of Beville,* 66 Cal.App.2d 271, 277 [152 P.2d 229]; *Estate of Desmond,* 34 Cal.App.3d 139, 147 [109 Cal.Rptr. 50]) and find them not to be authority for a contrary conclusion.