No. 51,051

In the Matter of the Estate of MILDRED RAMSEY, Deceased, JANE RAMSEY WISE, as Executor and individually, and JACQUELINE WILLIAMS, KATHLEEN ARBOGAST, and LANE C. RAMSEY, individually, *Appellants,* v. JAY C. RAMSEY, *Appellee.*

(622 P.2d 626)

Opinion filed January 17, 1981.

*George E. Grist,* of Grist & Bush, of Wichita, argued the cause and was on the brief for appellants.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Mary Kay Royse,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Mildred Ramsey died testate January 2, 1977, a resident of Sedgwick County. Her heirs-at-law and beneficiaries under her will were a son, Jay C. Ramsey; a daughter, Jane Ramsey Wise; and Jacqueline Williams, Kathleen Arbogast and Lane C. Ramsey, children of Clinton G. Ramsey, Jr., a deceased son. Jay C. Ramsey, appellee herein, filed a disclaimer to any portion of the estate pursuant to K.S.A. 59-2292. The disclaimer was filed July 10, 1978, objections thereto were filed July 24, 1978, and after a hearing the disclaimer was approved by the court January 22, 1979. The journal entry approving the disclaimer was not filed until April 12, 1979, and on the same date Jane Ramsey Wise, individually and as executor, Jacqueline Williams, Kathleen Arbogast and Lane C. Ramsey filed their notice of appeal from the order approving the disclaimer.

To fully understand the nature of the proceedings and the contentions of the parties, it is necessary to set forth the factual background in some detail.

During her lifetime, Mildred Ramsey accumulated three quarter sections of farm land in Sedgwick County. The Northeast quarter of Section 21, Township 25 South, Range 1 West of the Sixth Principal Meridan, Sedgwick County (hereafter tract I), was

conveyed by Mildred to her son, Jay C. Ramsey, on January 4, 1972. She filed a gift tax return at that time and Jay testified it was an outright conveyance and gift, although he continued to contribute to his mother's support. On September 29, 1976, Mildred Ramsey executed her will. Paragraph I of her will provides for the payment of debts, taxes and expenses while paragraph VIII appoints Jay C. Ramsey and Jane Ramsey Wise as co-executors of the will. Clinton G. Ramsey, Jr., also named as a co-executor, died in October, 1976, shortly after the will was executed. The other pertinent paragraphs of the will provide:

"II.

"It is my intent that each of my children receive an equal share of my estate, and in order that this desire may be carried out I direct that the appraisals made by the court appointed appraisers of the three quarter sections hereinafter devised, shall be added together as a total sum and that such total sum be divided by three and the result of such division shall represent a base bequest to each child, and that an adjustment be made among my three children to the extent that each of them shall receive an equal dollar amount from the devise of the said real property, which such adjustment may be made from the residue of my estate or by a devisee or devisees personally supplying the difference.

"III.

"I give and devise to my son, JAY C. RAMSEY, the farm on which he now resides and which is described as follows:

Northeast Quarter of Section 21, Township 25 South, Range 1 West of the Sixth P.M., Sedgwick County, Kansas,

subject to the mortgage, which mortgage shall be assumed and paid by him; burdened with the equalization value formula set forth in paragraph II. It is my desire, if this property is sold by JAY C. RAMSEY, that said property be first offered for purchase to either CLINTON G. RAMSEY, JR. or JANE RAMSEY WISE.

"IV.

"I give and devise to my son, CLINTON G. RAMSEY, JR., the following described property, to-wit:

Southeast Quarter of Section 11, Township 25 South, Range 2 West of the Sixth P.M., Sedgwick County, Kansas,

burdened with the equalization value formula set forth in paragraph II. It is my desire, if this property is sold by CLINTON G. RAMSEY, JR., that said property be first offered for purchase to either JAY C. RAMSEY or JANE RAMSEY WISE.

"V.

"I give and devise to my daughter, JANE RAMSEY WISE, all of my interest in and to the following described property, to-wit:

Northwest Quarter of Section 12, Township 25 South, Range 2 West of the Sixth P.M., Sedgwick County, Kansas,

burdened with the equalization value formula set forth in paragraph II. In the event at the time of my death said real property is subject of a contract of sale, then and in that event, I devise and bequeath said contract of sale to my said daughter, JANE RAMSEY WISE, in lieu of said property, it being my express intent and

direction that said property, or the balance due on any contract of sale thereof pass to my said daughter, JANE RAMSEY WISE.

"VI.

"Notwithstanding anything hereinabove that might be construed to the contrary, it is my express intent and direction that in the event that any one of the three quarter sections above described is conveyed to a child of mine during my lifetime, such real property shall be considered a part of my estate and the appraisal made as above provided in order to carry out my intentions that each child of mine shall share equally in my estate.

"VII.

"All of the rest, residue and remainder of my property, whether real, personal or mixed and wherever situated, and of which I may die seized or possessed, and of which I have power of distribution at the time of my death, I give, devise and bequeath to my children, JAY C. RAMSEY, CLINTON G. RAMSEY, JR., and JANE RAMSEY WISE, or the survivor or survivors of them, share and share alike."

Prior to her death, Mildred sold on a contract the property described in paragraph V, and Jane became entitled to receive the contract in lieu of the property as set forth in the will.

Following Mildred's death on January 2, 1977, the family got together and divided her household goods and personal effects without benefit of any order or approval by the court. Appellee, Jay C. Ramsey, received tangible personal property having a value of $162.50. As a part of the subsequent proceedings relating to his disclaimer, he offered to return the specific personal property to the estate or pay the estate the sum of $162.50. On January 6, 1977, Jay C. Ramsey filed a petition for probate of his mother's will. On February 7, 1977, he and his sister, Jane Ramsey Wise, were appointed and qualified as co-executors of the will of Mildred Ramsey. By November, 1977, disagreement had arisen about the proper construction of the terms of the will and the ultimate distribution to be made thereunder. On November 7, 1977, appellee filed a petition for construction of the will and a determination of how the equalization formula of paragraph II would be applied. On April 4, 1978, Jay and Jane, as co-executors, filed their inventory and valuation of the assets in the estate. Tract I, the property deeded to Jay in 1972, was not included. The quarter section described in paragraph IV of the will was valued at $181,500.00 and the contract for sale of the property described in paragraph V at $78,448.46. The actual balance on the contract was $90,000.00 but that figure was discounted to reflect the low interest rate and small annual principal payments. The remaining personal property was insufficient to pay debts, expenses and

taxes to say nothing of equalizing the values of the three properties involved. Tract I was also appraised at the same time for purposes of the hearings in the trial court and its value determined to be $153,900.00.

In June, 1978, the trial court orders on the petition to construe the will were filed. The court found the will to be clear and unambiguous, applied the paragraph II formula to all three properties and ruled that Jay C. Ramsey should pay into the estate $12,100.00 and the children of Clinton G. Ramsey, Jr., the sum of $39,700.00, to equalize the values of the three properties and that Jane should receive the sum of $51,800.00 from the estate. The court also found that if the residue was insufficient to pay costs, expenses and taxes, the parties should pay a proportionate share into the estate to cover such items.

On July 10, 1978, Jay filed his resignation as co-executor and a disclaimer in the following form:

"The undersigned, Jay C. Ramsey, hereby disclaims any and all interest in and to the estate of his mother, Mildred Ramsey, deceased, or under the laws of intestate succession of the State of Kansas."

This appeal is from the order of the trial court which determined that the disclaimer had been timely filed.

Appellants' first argument is that the disclaimer was not timely filed. The disclaimer statutes, first passed by the legislature in 1968, provide:

"59-2291. Disclaimer to succession; persons authorized; filing of written instrument, contents. Any heir, next of kin, devisee, legatee, person succeeding to a disclaimed interest, beneficiary under a testamentary instrument or any person designated to take pursuant to a power of appointment exercised by or under a testamentary instrument may disclaim in whole or in part the succession to any property, real or personal, or interest therein by filing a written instrument within the time and in the district court as hereinafter provided. The instrument shall (a) describe the property or part or interest therein subject to the disclaimer; (b) a declaration of disclaimer and the extent thereof and (c) be signed and acknowledged by the disclaimant."

"59-2292. Same; filing and recordation of disclaimer instrument. The disclaimer instrument shall be filed within nine (9) months after the death of the decedent or the donee of the power, as the case may be, or if the taker of the property or interest is not then finally ascertained or if his or her interest has not become indefeasibly fixed both in quality and in quantity, then not later than nine (9) months after the event when the taker has become finally ascertained and his or her interest has become indefeasibly fixed both in quality and in quantity.

"Said disclaimer instrument shall be filed and recorded in the district court in which the estate of the decedent or the donee of the power is or may be administered."

Prior to the enactment of the disclaimer statutes in 1968, the law was settled in Kansas that a beneficiary under the terms of a will was presumed to accept a gift favorable to him or her. To renounce such a gift it had to be done within a reasonable time. *Strom v. Wood,* 100 Kan. 556, 164 Pac. 1100 (1917); 2 Bartlett's Kansas Probate Law and Practice § 512 (1953), at 2. One of the primary factors considered by the courts in the determination of a "reasonable time" was whether a beneficiary was aware of the material facts concerning the bequest or devise. 6 Bowe-Parker: Page on Wills, § 49.8 (1962), at 47.

It is appellants' contention that appellee filed his disclaimer after the time allowed by the statute had expired. The statute requires the disclaimer to be filed within nine months after the death of the decedent or nine months after the taker of the property has been ascertained, and such taker's property has become indefeasibly fixed in quality and quantity. In the case at bar, Mildred Ramsey died on January 2, 1977, and appellee did not file his disclaimer until July 10, 1978, more than eighteen months after decedent's death. Since the disclaimer was not filed within the first nine months after Mildred Ramsey's death, if valid it must come within the second clause of the statute and be filed within nine months of the time the interest became indefeasibly fixed both in quality and in quantity.

Appellee, of course, argues that this case fits within the second clause of K.S.A. 59-2292. Citing Webster's Third New International Dictionary (1968), appellee defines "indefeasible" as "not capable of or not liable to being annulled or voided or undone." Thus K.S.A. 59-2292 would require that the interest of appellee be unalterably and absolutely settled in quality and quantity before the nine months period would begin to run. He, therefore, argues that the "triggering event" was the determination by the court that, with respect to appellee, the will imposed a liability, rather than conferring a benefit. The court orders interpreting the will were filed on June 8, 1978, and June 21, 1978. Appellee filed his disclaimer on July 10, 1978, well within nine months of those dates.

Common law and public policy require that a beneficiary be given a reasonable time under all the facts and circumstances within which to file a disclaimer. *Strom v. Wood,* 100 Kan. 556.

The California Court of Appeals in *Estate of Koplin,* 70 Cal. App. 3d 686, 694, 139 Cal. Rptr. 129 (1977), commented while construing the California disclaimer statute that:

"The Legislature obviously recognizes that public policy is best served by allowing a beneficiary to make a disclaimer of his interest at that point in time where the beneficiary is best able to weigh the alternate possibilities of his actions."

Appellee contends that he was not in a position to weigh the desirability and effect of a disclaimer until after the court ruled upon the petition for a construction of the will and applied the equalization formula provided therein. We agree. The statute obviously contemplates factual situations where a beneficiary under a will cannot make an intelligent decision about the effects of a disclaimer within nine months of the death of the decedent. That situation exists in the present case. It was not until the court's rulings in June, 1978, that Jay could determine with certainty just what his rights and obligations might be under the will. Although the 1972 conveyance was absolute in form and conveyed fee simple title at that time, it was not until 1978 that the actual overall effect of the terms of the will were determined. The testatrix's attempt in paragraph II of her will to devise tract I to Jay could not limit or affect the absolute conveyance made to him several years before. A will speaks from the date of the death of the decedent, (*Baker University v. K.S.C. of Pittsburg,* 222 Kan. 245, 564 P.2d 472 [1977]), and cannot serve to set aside or affect an absolute conveyance made prior to death absent specific circumstances such as fraud, undue influence, etc., none of which are present in the instant case. Likewise, paragraph VI of the will, which provides that any pre-conveyed property shall be considered a part of the estate cannot operate to bring the property back into the estate or to burden Jay with obligations contained in the will. It merely serves to clarify the intent and desire of his mother. While some may consider it unfortunate that Jay has elected to renounce his participation in the estate, thereby defeating his mother's wishes, the fact remains that she conveyed tract I to Jay long before the 1976 will was executed and he cannot be denied his statutory right to make such a decision. We hold the disclaimer was timely filed. For a comprehensive article on several aspects of the current use of disclaimers see Note, *Disclaimer Statutes: New Federal and State Tools for Postmortem Estate Planning,* 20 Washburn L.J. 42 (1980).

Appellants next contend that appellee is estopped from disclaiming his interest in the estate because he has accepted benefits from the estate. Those benefits are alleged to be the personal property received through the family distribution of the decedent's personal effects, and appellee's fee as co-executor. Appellants rely upon *Nusz v. Nusz*, 155 Kan. 699, 127 P.2d 441 (1942), which was decided long before our disclaimer statutes were enacted. *Nusz* is authority for the proposition that one cannot accept the benefits of a will and reject its burdens. K.S.A. 59-2291 provides in part that a beneficiary under a will "may disclaim in whole or in part the succession to any property, real or personal, or interest therein   .   .   .   ."

We are not called upon and do not decide whether the rule of *Nusz* has been modified by the statutes. Suffice it to say the distribution of the personal property was done by the family members under some sort of family agreement before the will was presented for probate and may or may not have been done as provided in the will. As a named co-executor Jay was under a duty to submit his mother's will for probate. *In re Estate of Harper*, 202 Kan. 150, 446 P.2d 738 (1968). When a conflict developed he promptly submitted his resignation. The receipt of a fee, which was agreed to by appellants, was for services rendered the estate and, under the circumstances in this case, would not prohibit the filing of a valid disclaimer or estop Jay from renouncing his interest in the estate.

Finally, appellants contend that appellee is obligated under the equalization formula in the will, and other language therein evidencing the testatrix's intent that the children be treated equally, to pay a portion of the debts, expenses and taxes. Again, appellants argue that appellee cannot accept the benefits of the will without also accepting the burdens. Having timely filed his disclaimer renouncing all benefits under the will, the point is without merit.

In closing, we pause to note that we agree with the trial court that the will of Mildred Ramsey is clear and unambiguous. There can be no doubt from reading the entire will that Mrs. Ramsey wanted to treat her children equally and she undoubtedly thought she had accomplished her purpose. Unfortunately, runaway inflation and insufficient personal property thwarted her good in-

tentions. For a similar unfortunate result, see *In re Estate of Wernet,* 226 Kan. 97, 596 P.2d 137 (1979). The record is not entirely clear why Mrs. Ramsey attempted to devise tract I to her son Jay when she had deeded it to him several years before. Apparently, Mrs. Ramsey, sometime prior to 1972, had executed a similar will and at the time of the revision she neglected to tell her attorney about the prior conveyance to Jay. The prior will, the gift tax return and the conveyance to Jay were all handled by a different attorney from the one who prepared the 1976 will. It appears that when Mrs. Ramsey consulted her new attorney in 1976, she was primarily interested in making certain that Jane was protected as negotiations were underway at that time for the sale of the quarter section described in paragraph V of the will. She also wanted to include her daughter as a co-executor. With those thoughts uppermost in her mind, she evidently advised her attorney that all other provisions of the old will were satisfactory and the new will was prepared accordingly.

We hold that the disclaimer of Jay C. Ramsey was timely and properly filed and precludes him from participating in any of the benefits or burdens of the estate of Mildred Ramsey, deceased.

The judgment is affirmed.