343 So.2d 1329 (1977)
GEORGE W. DAVIS & SONS, INC., a Florida Corporation, Appellant (Plaintiff),
v.
Reubin O'D. ASKEW, Etc., et al., As and Constituting the Head of the Department of Revenue of the State of Florida, Appellees (Defendants).
Nos. AA-186 and AA-208.
District Court of Appeal of Florida, First District.
March 30, 1977.
E.C. Deeno Kitchen and Brian S. Duffy, Ervin, Varn, Jacobs & Odom, Tallahassee, for appellants in AA-186, for appellees in AA-208.
Robert L. Shevin, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., for appellees in AA-186, for appellants in AA-208.
Julian Bennett, Hilton, Bennett, Logue, Paulk & Burke, Panama City, for appellees in AA-208.
McCORD, Judge.
These are two consolidated appeals from the same final judgment. Each party is both appellant and appellee, but George W. Davis & Sons, Inc., (hereinafter sometimes called Davis) having filed notice of appeal first, will be treated as appellant and the Department of Revenue of the State of Florida (hereinafter sometimes called the Department) will be treated as appellee and cross-appellant.
The final judgment enjoined the Department (defendant below) from collecting from Davis (plaintiff below) taxes on admissions for transactions (individual admission fees for sport fishing on party boats in the Gulf of Mexico) between July 1, 1970, and the filing in the Circuit Court of Leon County of the mandate of this court in *1330 Department of Revenue v. Pelican Ship Corporation, 257 So.2d 56 (Fla. 1 DCA 1972). Davis contends the trial court erred in not encompassing within the injunction a period extending beyond the filing of the aforesaid mandate. The Department contends the trial court erred in enjoining it from collecting any of the taxes. We agree with the ruling of the trial judge and therefore disagree with the contentions of both parties.
The trial court in its final judgment made a well-reasoned analysis of this case as follows:
"Plaintiff operates deep-sea fishing boats which sail from Panama City out to the high seas, where paying customers, for a charge made when they board the ship in Panama City, fish, relax and, in due time, return to Panama City. For many years, plaintiff collected from its customers and remitted to the state the admissions tax imposed by Chapter 212, Florida Statutes.
In 1966, plaintiff became aware of an injunction against the collection of this tax secured by a competitor operating out of Destin[1]. This injunction, of course, applied only with reference to the taxes of the competitor, but was based upon a holding that the tax was invalid as applied to operations which, for all practical purposes, were identical with those of plaintiff.
Plaintiff was informed that this case was being appealed, and it continued to collect from its customers and remit to the state the `admission' taxes on its charges to its customer.
In April 1968, the District Court of Appeal, First District, decided the Kelly case and held, in quite explicit language, that the admission tax laws did not apply to operations such as those of Kelly Boat Service, Inc. which, as above stated, were, for all practical purposes identical with those of plaintiff. Plaintiff was informed by a representative of the Florida Revenue Commission that the case would be appealed further and so, for a time, it continued to collect and remit to the state admission taxes on the amounts it charged its customers.
Thereafter, numerous conferences were had between plaintiff's president and representatives of the Revenue Commission. The parties are not in agreement as to exactly what transpired at these conferences, but the court is convinced that the Revenue Commission felt bound by the Kelly decision insofar as operations within the First Appellate District were concerned, but was not satisfied with that decision, and continued to collect the tax in the remainder of the state. The Revenue Commission made it plain to plaintiff that it would not, so long as Kelly was in effect, attempt to enforce collection of any admissions tax upon plaintiff's operations, although its officers disclaimed any abandonment of their views that Kelly was wrong.
In the spring of 1969, plaintiff ceased to collect admission taxes from its customers but, as an anchor to windward, it at that time increased its charges so that it could absorb the tax if it were later collected.
Finally, in the fall of 1969, after further indications that the Department of Revenue would not enforce collection of admission taxes upon its operations, plaintiff abandoned any plans to collect or absorb the tax, and thereafter operated on the theory that the tax would never be enforced. This status was unchanged until the decision of the District Court of Appeal in Pelican[2], which held the admission tax on admissions legally indistinguishable from those of plaintiff to be taxable.
After Pelican, the Department of Revenue demanded, and plaintiff paid, the tax beginning in the fall of 1972.
A most careful examination of Kelly and Pelican leads this court to the conclusion *1331 that any legal scholar, including the circuit judge who decided Pelican (and whose decision was reversed) would find it most difficult, if not impossible, to anticipate the distinction from Kelly drawn by the Court in Pelican.

It is not the function of this court to say that either decision was wrong. It is the function of this court to protect the legal rights of citizens who try earnestly to pay their just taxes[3].
After the decision in Kelly, plaintiff found itself in this position: A court of final appellate jurisdiction had held the admissions tax inapplicable to a factual situation which any reasonable man, including a learned lawyer, would find to be legally indistinguishable from that of plaintiff. The Department of Revenue recognized this by advising plaintiff that it would not, at least for the time being, attempt to enforce collection of the tax upon plaintiff's operations. At least one major competitor was protected by a court order from the duty to collect the tax. Under these circumstances, the plaintiff was justified in ceasing to collect the tax from its customers. Had plaintiff continued to collect the tax, and had Kelly not been `distinguished' by Pelican, plaintiff would have been collecting money which, under Kelly, did not belong to the state, and which plaintiff would have been legally and morally obligated to return to its customers upon demand.
In the last analysis, the law is what the courts say it is. It is the duty of all citizens to obey the law as announced by the courts.
When plaintiff, following the language of Kelly, ceased to collect the admission tax from its customers, it was guided by the highest authority available to it at the time. It should not be penalized for so doing.
The appellate court of this state has long applied the principles of estoppel to the state and its agencies, sometimes going further than this court and reversing this court for refusing to hold the state estopped by the acts of its officers.
Ordinarily, where a tax legally owing by a citizen is not collected due to the error of the taxing officials, the state should not be estopped from back assessing and collecting that tax. The citizen is merely paying at a later date that which he should have paid in the beginning.
But when the state makes a private business, in effect, its agent for the collection of taxes from others, and makes the business liable for the tax it fails to collect as a means of enforcing the collection, a different situation is presented. While Kelly was in effect, plaintiff was confronted with what any reasonable man would consider an authoritative holding that the tax was not legal and should not be collected by plaintiff from its customers.
It would be most unconscionable to now say that plaintiff should have anticipated Pelican and, notwithstanding Kelly, should have exacted the tax from its customers.
However, when the mandate came down in Pelican, the law as (apparently) determined in Kelly was superseded by the law as announced in Pelican, and plaintiff should have then immediately begun collecting the tax from its customers. Plaintiff was then no longer protected by Kelly or any representative of any of the staff of the Department of Revenue."
The Florida Supreme Court has held that in certain circumstances, estoppel will lie against the state. Daniell v. Sherrill, 48 So.2d 736 (Fla. 1950), 23 A.L.R.2d 1410; Trustees of the Internal Improvement Fund v. Bass, 67 So.2d 433 (Fla. 1953). The courts of Florida have also, in certain instances, upheld estoppel against assessment of back taxes by a municipality. City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965); and Coppock v. Blount, 145 So.2d 279 (Fla. 3 DCA *1332 1962). Also other jurisdictions have upheld estoppel against the collection of taxes. See U.S. v. Bureau of Revenue, 87 N.M. 164, 531 P.2d 212 (Ct.App.N.M. 1975); In re Estate of Kruse, 36 Cal. App.3d 909, 112 Cal. Rptr. 50 (1974); Pilgrim Turkey Packers, Inc. v. Dept. Rev., 261 Or. 305, 493 P.2d 1372 (1972). It is apparent that, although the instances thereof are not numerous, estoppel will lie against the government and a taxing agency may be estopped from collecting back taxes if the circumstances of the particular case are sufficiently strong to warrant an estoppel. This case involves exceptional circumstances under which justice and right require that estoppel be invoked.
In Straughn v. Kelly Boat Service, Inc., supra, hereafter referred to as Kelly I, this court held admission taxes such as those involved in this suit to be void. There the court said:
"The basic question presented for our determination in this appeal is whether the plaintiff's said operations were subject to the sales, use, and admission tax laws of the State of Florida (Chapter 212, Florida Statutes, F.S.A.).
* * * * * *
In view of our above holding that the taxes involved in this appeal are void, there is no necessity here for us to pass upon the other points raised by the appellants in this appeal, and we do not here pass upon them, one way or the other. Accordingly, the final decree appealed from herein must be and it is Affirmed." (Emphasis supplied)
The court file in Kelly I shows that a petition for rehearing was filed which raised the question of the court's decision in relation to the admission tax. It was denied.
Confronted with the above decision in the later case, Department of Revenue v. Pelican Ship Corporation, supra, this court evidently determined that it had erred in its ruling in Kelly I. The opinion in Pelican took the view that in Kelly the court had only ruled the taxes involved in the suit other than the admission taxes were void and stated:
"... The admissions transaction was not squarely ruled upon by our decision in Kelly Boat Service. Yet, if there is language in that decision tending to indicate that we held the admissions to be not taxable, then the matter should be clarified by receding from any such language."
It is clear that in Kelly I this court ruled the admissions tax void and later in Pelican receded from such ruling and held the admission tax valid. As stated by the trial court in its final judgment, it would be unconscionable for us to now say that Davis, who, with the approval of the Department of Revenue, followed the law as pronounced by the final decision of this court in Kelly I, must now pay back taxes for the interim period between this court's opinion in Kelly I and its opinion in Pelican.
While as a general rule, substantive tax liability may not be discharged by estoppel, here we do not have the usual tax situation in which an estoppel has been denied. This is not a tax which the taxing authority, through error or mistake in interpreting the law, failed to assess against a taxpayer and upon later discovering the error, seeks to now require the taxpayer to pay what he should have paid at the previous time. Here, the tax is one which the law requires the taxpayer to collect for the state. The taxpayer is, in a sense, collecting agent for the state. During the interim between the court's final opinion in Kelly I and its opinion in Pelican reversing its decision in Kelly I, appellant had no authority to collect the tax. As the trial court pointed out in its final judgment:
"Had plaintiff continued to collect the tax, and had Kelly not been `distinguished' by Pelican, plaintiff would have been collecting money which, under Kelly, did not belong to the state, and which plaintiff would have been legally and morally obligated to return to its customers upon demand."
There is no way that appellant can now reverse time and go back and collect this tax from its past patrons. Under these *1333 circumstances, we find that the trial court was correct in ruling that the state is estopped to now require that Davis pay these taxes from its own pocket.
We have not overlooked this court's opinion by a different panel in Department of Revenue v. Kelly Boat Service, Inc., 324 So.2d 651 (Fla. 1 DCA 1975), hereafter referred to as Kelly II, which reached a different conclusion from the ruling here on the question of payment of the back admission taxes. We have examined the record of that case and find that the primary focus of appellees there was upon their contention that the admission tax was illegal  an issue which had been decided in Pelican but with different parties. Appellees there also contended that if the tax was valid, the law established by Pelican should be given prospective application only and not retrospective application. Although appellees in Kelly II referred to estoppel on several occasions throughout that voluminous record, there was never any clear focus on a contention of estoppel. There was no evidence presented in Kelly II (as was presented here) which would indicate that the Department, through its actions had encouraged appellees not to collect the tax during the interim between the decision in Kelly I and the decision in Pelican. In fact, the only evidence on that point was that the Department had never told Kelly or any of the other boat operators who testified in that case that the tax was not due. The decision in Kelly II was bottomed squarely upon the record there before the court when this court said:
"The state is not foreclosed, by reason of our 1968 decision in Straughn v. Kelly Boat Service, Inc., or otherwise, to assert that on the facts shown by this record Kelly should satisfy its full tax liability incurred within three years prior to August 1, 1973."
Based upon the record in the case sub judice, we find as aforesaid that estoppel should be applied in this case for the period of time between the rendition of this court's opinion in Kelly I and its opinion in Pelican.
Affirmed.
RAWLS, Acting C.J., concurs.
MILLS, J., dissents.
MILLS, Judge, dissenting:
I dissent. The trial court entered a judgment in a declaratory judgment action holding the Department's assessment of delinquent taxes on admissions to Davis' deep sea fishing boats for the period of 1 July 1970 to 2 February 1972 was void. Davis appeals contending the court erred in failing to hold that the assessment of taxes for the period of 2 February 1972 to November 1972 was void. The Department cross appeals contending the court erred in holding the assessment of taxes for the period of 1 July 1970 to 2 February 1972 was void. The issue before us is whether the Department is estopped from assessing the delinquent admissions tax.
Davis operated party and charter deep sea fishing boats in the Gulf of Mexico. The boats embarked from Panama City where an admission charge was collected from the customers. For many years prior to January 1969, Davis collected from its customers and remitted to the Department the admissions tax imposed by Chapter 212, Florida Statutes.
In April 1968, this Court held in Straughn v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1st DCA 1968), that the State did not have authority to impose and collect sales taxes on the sale of food and drink and the rental of fishing equipment which occurred on a deep sea fishing boat outside the territorial limits of Florida in the Gulf of Mexico. Davis contended that our decision also held that the Department had no authority to impose and collect an admissions tax. The Department arrived at a similar construction to the extent that it made no effort to collect the admissions tax in North Florida counties within the district of the First District Court of Appeal, although it did collect the tax throughout the rest of the State. The trial court agreed with Davis' interpretation of our decision.
Thereafter, numerous conferences were held between Davis and representatives of the Department. These representatives *1334 made it clear to Davis that as long as Kelly was in effect it would make no attempt to enforce collection of admission taxes on his operation, although they disagreed with Kelly.
As a result of his construction of Kelly and his conferences with representatives of the Department, Davis ceased collecting and remitting admissions taxes as of January 1969. He continued this practice until our decision in Department of Revenue v. Pelican Ship Corp., 257 So.2d 56 (Fla. 1st DCA 1972), which held that a business operation similar to the one here was subject to the admissions tax. After Pelican, the Department demanded, and Davis paid, the admissions tax commencing in November 1972.
The trial court held that because of Davis' construction of Kelly, with which it agreed, and the Department's conduct after Kelly, it was estopped to assess a delinquent admissions tax for the period 1 July 1970 to 2 February 1972, the date the mandate in Pelican was issued.
Davis, the Department and the trial court incorrectly read and interpreted Kelly. It clearly appears in Kelly that we did not rule on the validity of the admissions tax. This is carefully pointed out in our subsequent decision in Pelican.
Although the trial court's judgment and Davis' counsel make persuasive and appealing presentations in support of Davis' theory of estoppel, the law is to the contrary.
As a general rule, substantive tax liability may not be discharged by estoppel.
"Generally, however, for surmounting considerations of public policy it has been held that in the collection of sales taxes, as in regard to the collection of other taxes by the state, no laches, waiver, or estoppel can be imputed to the state. It seems to be universally recognized that, generally, a state cannot be estopped by the acts and conducts of its officers or agents in the performance of the governmental function of collecting taxes legally due. The reason for the rule is obvious: no administrative officer is vested with the power to abrogate the statute law of the state, nor to grant to an individual an exemption from the general operation of the law.
"... Laches or failure to collect a tax by a state tax commission or agency administering the tax no matter how long such conduct is continued, does not estop the state from requiring payment which is due and unpaid and not barred by the statute of limitations... .
"... A rule or regulation of a state tax commission purporting to exempt a taxpayer from the payment of his tax where no authority to do so has been specifically granted to it by the legislature cannot operate as an estoppel to collect such tax in the case of transactions which have been closed so that the seller cannot collect the tax from the purchaser...." 68 Am.Jur.2d, Sales and Use Taxes, Section 162, Page 216-218.
In North American Co. v. Green, 120 So.2d 603 (Fla. 1959), the Supreme Court of Florida held that where the Comptroller erroneously announced his adherence to a legal interpretation that a transaction was not taxable, he is not estopped from later asserting that tax liability exists.
Likewise, in the case of Dominion Land and Title Corporation v. Department of Revenue, 320 So.2d 815 (Fla. 1975), the Supreme Court rejected a contention by the taxpayer that the failure of the officials charged by statute to collect taxes when due constituted an estoppel to assert penalties.
In addition, Section 212.14(6), Florida Statutes (1973), permits the Department to back assess for all unpaid admissions taxes for a three-year period. The statute vests in the Department no discretion to waive this tax liability.
Davis' misunderstanding or misconstruction of Kelly does not excuse his failure to pay the tax imposed by statute. Although there may be exceptional circumstances under which a substantive tax liability may be discharged by estoppel, those exceptional *1335 circumstances are not present in this case. The acts of the Department's representatives cannot estop the Department from collecting delinquent admissions tax legally due the State and which are not barred by the statute of limitations.
I would reverse that part of the judgment which holds the delinquent tax assessed for the period of 1 July 1970 to 2 February 1972 void and I would affirm the trial court's refusal to hold void the tax assessed for the period of 2 February 1972 to November 1972.
NOTES
[1] Kelly Boat Service, Inc., v. Straughn, Circuit Court of Okaloosa, on appeal, Straughn v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1 DCA 1968).
[2] Dept. of Revenue v. Pelican Ship Corp., 257 So.2d 56 (Fla. 1 DCA 1972).
[3] The record shows that plaintiff has other business with respect to which the sales and use taxes have been regularly paid.