LARRY G. SMITH, Judge.
Realty Management Corporation appeals an order of the appellee, Florida Department of Labor and Employment Security, Division of Employment Security, finding that Realty is liable for unemployment compensation contributions with respect to earnings of its salesmen, and that the Division is not estopped to collect unemployment compensation contributions from Realty retroactive to July 1, 1972. The issues are whether Realty’s salesmen were compensated “solely by way of commission”, which is classified as exempt employment under Section 443.03(5)(7 )(16), Florida Statutes (1975); and if such employment is not exempt, is the Division estopped to collect taxes due for prior years back to July 1, 1972, because the Division advised Realty that it did not owe taxes, and refunded to Realty taxes already paid by it for the same period. We affirm the Division’s order, finding Realty liable for the tax, and finding insufficient basis for estoppel against the Division.
The statute exempts from “employment” for which the tax must be paid
“(16) Service performed by an individual or a person as a real estate salesman or agent, if all such service performed by such individual or such person is performed for remuneration solely by way of commissions.” (Section 443.03(5)(7 )(16), Florida Statutes (1975))
Determination of the issues requires consideration of the manner in which Realty compensated its salesmen. Realty allowed its salesmen to receive a weekly “draw” against future commissions earned by them on sales of real estate. It contends that the compensation paid to its salesmen was nevertheless “solely by way of commission”, pointing out that it reserved the right and did on occasion terminate the draw privilege if a salesman performed poorly, a salesman had the option to receive a draw or not, and salesmen have in fact continued in Realty’s employment after having their draw privileges discontinued. Appellee responds by pointing out that although a salesman’s draw was charged against commissions he earned, if he terminated his employment before earning commissions equal to the total of the draws received, he was not required to repay the excess to Realty. Thus, the draw could not be considered exclusively as an advance against future commissions, nor as a “loan”, since it was not repayable even if not earned. Only in the event a salesman later returned to Realty’s employment, after being discharged or voluntarily leaving, would Realty continue to charge the salesman with the amount of unearned draws received.
We agree with the Division’s contention that Washington National Insurance Company v. Employment Security Commission, 61 Ariz. 112, 144 P.2d 688 (1944), points the way to a decision adverse to Realty. This is so because Arizona’s unemployment compensation act contained language identical to Florida’s, and under similar facts the Arizona court found that the employees *1116 were not paid “solely by way of commission” so as to exempt the employer from contributions for the unemployment tax. In the Washington National case insurance agents received an advance against future commissions based upon an agreement with their employer. The court found that the payment of a fixed sum for a period of thirteen weeks, without regard to the amount of insurance sold each particular week, did not constitute payment solely by commission, particularly in view of the fact that amounts so paid were merely chargeable against possible earnings, and there was no fixed personal responsibility for repayment. We have examined the authorities cited by Realty, including Dimmitt-Rickoff-Bayer Real Estate Co. v. Finnegan, 179 F.2d 882 (8th Cir. 1950), cert. den. 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605 (1950), and Standard Life and Accident Insurance Co. v. U.S., 75-1 C.C.H.T.C. § 9352 (W.D.Okl. 1975), and other authorities on this point. However, we do not consider these authorities controlling, since they appear to turn primarily upon the question whether the salesmen or agents were employees or independent contractors. Furthermore, it is clear that resolution of the employee-independent contractor question requires consideration of many factors, the method of compensation being only one. Realty did not present evidence on this issue in the proceeding below, and cannot raise the independent contractor question for the first time on appeal. 3 Fla.Jur.2d, Appellate Review, § 299, p. 359. Also, in Dimmitt, there was no draw system available as in the instant case.
Turning to the estoppel issue, which we have concluded also must be decided adversely to appellant-Realty, we must consider the factual circumstances in some detail. Since 1972 Realty has used real estate salesmen to sell property, and until 1975 Realty paid unemployment contributions as required by Chapter 443, Florida Statutes, on the earnings of its salesmen. In 1975, after an inquiry by Realty and a conference with a Division employee, the Division advised Realty by letter dated January 23, 1975, that its employment of salesmen on a commission, with an optional draw against commissions, was exempt employment, so that Realty was not liable for the unemployment compensation tax. Upon receipt of this advice, Realty discontinued payment of the tax. In addition, the Division refunded to Realty all contributions made by it since 1972, as did the federal government. Realty’s liability for the tax later became an issue when a discharged salesman applied for, and in October, 1976, was held entitled to unemployment compensation benefits. Subsequent to this determination, the Division reconsidered Realty’s tax status and determined that Realty was in fact liable for the tax, including the amount previously refunded by the Division. Realty’s account, which had been placed on “inactive status”, was reactivated by the Division, and on March 31, 1977, the Division issued a written demand upon Realty for the unpaid contributions. Realty then initiated the proceedings which resulted in the order appealed here.
Realty bases its estoppel claim upon the fact that it changed its position by discontinuing payment of the tax after the 1975 letter absolving it of liability for the tax, and upon the further fact that it acted in reliance upon the Division’s representation as to its tax liability by continuing its employment plan permitting its salesmen to receive draws against commissions. Realty argues, not without some justification, that equity and fairness would dictate that it be relieved of back taxes from July, 1972, to October, 1976, the time when Realty was again made aware of its tax liability, after receiving contrary advice from the Division in January, 1975. Realty reasons that had it been advised that its tax liability arose solely because of the draws allowed its salesmen, it would have discontinued the practice, thus avoiding any liability for the tax. Although we are sympathetic to Realty’s predicament, we nevertheless are compelled by established law to reject its estop-pel argument.
Prior decisions of this court have firmly established the rule that the state can be estopped, but only under exceptional cir *1117 cumstances. Greenhut Construction Company v. Henry A. Knott, Inc., 247 So.2d 517 (Fla. 1st DCA 1971). Such exceptional circumstances were found present in George W. Davis & Sons, Inc. v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1977). In that case a taxpayer was relieved of tax liability arising from its failure to collect admissions taxes from its fishing customers during a period of time between conflicting decisions of this court first declaring the tax void, and subsequently declaring it valid. Without a lengthy recitation of the unusual facts and court decisions involved in the George W. Davis case, we think that case is clearly distinguishable from the present one, so that its holding does not support Realty’s claim of estoppel. There, as the court pointed out, the tax was one the taxpayer-boat operator was required to collect from its customers, for the state. The taxpayer, said the court, was in a sense a “collecting agent for the state” (George W. Davis, supra, at 1332). The court carefully pointed out that the tax being sought was not one which the taxing authority, “through error or mistake in interpreting the law” (at 1332), failed to assess against a taxpayer and upon later discovering the error, seeks to require the taxpayer to pay what he should have paid at the previous time. By contrast, here Realty was relieved of the tax through error or mistake in interpreting the law, and the Division thereafter merely sought to require Realty to pay what it should have, and in fact did pay during prior years, until it received the erroneous advice from the Division. Moreover, in the George W. Davis case, the court decision relied upon was such that during the time that decision was effective, the boat operator had no authority to collect the tax, and had it continued to collect the admissions tax in the face of a court decision holding the tax void, it would have been collecting money which did not belong to the state. Most significantly, as the court stated, there was no way in which the boat operator could “reverse time and go back and collect this tax from its past patrons” (George W. Davis, at 1332). Here, the tax contribution is one due from Realty, not third persons, and there are no exceptional circumstances remotely comparable to the George W. Davis case. We find no unusual detriment to Realty by reason of the demand for return of the refund it received from the state in 1975 for prior tax payments. Furthermore, although for the year 1975, and until October, 1976, Realty might justifiably have assumed that its method of operation created no tax liability, no change in its position actually occurred, other than its failure to remit the tax. True, it might have altered its method of compensating its salesmen so as to avoid tax liability; but we do not consider that its failure to do so is sufficient to constitute such a detriment as is required for estoppel against the state. Realty might have avoided all liability for the tax by changing its method of operation, but by the same token, by not changing Realty continued to reap whatever benefits it evidently expected to receive when it adopted the draw system of compensation in the first instance. We conclude, as did the Division, that estoppel does not apply against the state under the circumstances presented. See also Department of Revenue v. Hobbs, 368 So.2d 367, 368 (Fla. 1st DCA 1979), where we noted that George W. Davis “[stood] on its own exceptional facts”, and that “administrative officers aré not estopped through mistaken statements of the law”. (Id. at 369).
We note, however, that because of the special circumstances involved, penalties and interest were not and will not be assessed, provided Realty pays the contributions due under and within the time specified in the Division’s order.
For the foregoing reasons, the order appealed is affirmed.
ERVIN, J., concurs.
BOOTH, J., dissents.