389 So.2d 1034 (1980)
DEPARTMENT OF REVENUE of the State of Florida, Appellant,
v.
Virgil ANDERSON, C.M. "Max" Anderson, A.F. Brown and Nick Maltezo, Appellees.
No. LL-37.
District Court of Appeal of Florida, First District.
September 25, 1980.
Rehearing Denied November 25, 1980.
*1035 Jim Smith, Atty. Gen., and Martha J. Cook, Asst. Atty. Gen., for appellant.
David W. Palmer, II, Crestview, for appellees.
LARRY G. SMITH, Judge.
The Department of Revenue appeals a final judgment which enjoined the collection of admissions taxes[1] on admission fees collected from appellees' deep-sea party-boat fishing customers. The trial judge found the facts sufficient to indicate a "representation" by the Department that it would not hold appellees accountable for uncollected admissions taxes accruing during the period from August 1, 1970,[2] to February 6, 1972, the date of issuance of the mandate of this court in Department of Revenue v. Pelican Ship Corp., 257 So.2d 56 (Fla. 1st DCA 1972), cert. den. 262 So.2d 682 (Fla. 1972), cert. dism. 287 So.2d 93 (Fla. 1974).[3] The trial judge also found that the facts presented "an exceptional set of circumstances" justifying application of the defense of estoppel to prevent collection of the taxes for that period. We affirm.
The essential facts and circumstances of this latest episode in the continuing saga of fishing boat admissions tax controversies are set forth adequately in the final judgment, from which we quote as follows:
This suit involves four specific plaintiffs. Those are C.M. (Max) Anderson, Virgil Anderson, A.F. Brown and Nick Maltezo. This was a suit filed on behalf of those four plaintiffs to contest their liability to the State of Florida for admissions taxes accruing between the dates of August 1, 1970 and July 31, 1973. Between those dates, each of the plaintiffs operated deepsea [sic] "party" fishing boats. These boats, for a fee paid, or otherwise arranged for, at dockside within the State of Florida, would take customers into the offshore waters beyond Florida's territorial limits where they would spend the day fishing and relaxing. Later, usually at the close of the day, the customers are returned to the dock from which the boat departed. Brown's business operated out of Pensacola, Florida; Maltezo's operated from Destin, Florida. Both Andersons operated out of Panama City, although C.M. Anderson also operated out of Sarasota, Florida during the period in question.
During most of the period between August 1, 1970 and July 31, 1973, none of the plaintiffs collected an admissions tax from their customers or remitted any such taxes to the Department of Revenue on the fares which were charged their customers to board their boats. In July of 1973, plaintiffs were all served with a document styled "Notification of Intent to Examine Books and Records Under Chapter 212, Florida Statutes." The Andersons received theirs by certified mail; Brown's and Maltezo's were hand delivered by various auditors of the Department of Revenue. The tolling of the statute of limitations is not in dispute. Neither is the computation of the taxes which accrued during the period in question. The taxes accruing during this three year period, computed at 4% of each *1036 of the plaintiff's gross sales of admissions, are as follows:
* * * * * *
Although each of the plaintiffs also failed to collect taxes on his sales of admissions for various periods prior to August 1, 1970, the Department concedes that assessment and collection of these taxes is barred by the statute of limitations. F.S. § 212.14(6).
The plaintiffs contend that the Department of Revenue is estopped from asserting tax liability for all, or at least a portion, of that period. Each of the plaintiffs except C.M. Anderson testified that he had never received any contact from the Department of Revenue concerning his admissions tax liability prior to July of 1973, when they were contacted by auditors in connection with the audit which is the subject of this litigation. However, C.M. Anderson testified that as a result of his operation in Sarasota, Florida, he was contacted during this period by auditors of the Department of Revenue who covered Sarasota, Florida. His testimony is that these auditors in Sarasota insisted that he collect and remit to the State of Florida admissions taxes on this operation and threatened to take collection actions against him in the event that he did not.
One Joe Ed Davis who operates a similar business out of Panama City, Florida also testified to the effect that he had had certain conversations with agents of the Department of Revenue during this period in question which had led him to believe that his operation would not be subject to back assessments of admissions taxes in the event that he did not collect those taxes from his customers. Although when he first ceased collecting these taxes, Mr. Davis had structured his prices so as to absorb a deficiency should one be assessed as a result of his failure to collect these taxes, as a result of these conversations, he stopped structuring his prices so as to cover a possible deficiency. There was some evidence adduced to the effect that, at a certain undisclosed point in time he may have informed the various plaintiffs of some or all of these conversations. However, none of the plaintiffs were present at the time these conversations between Davis and the Department of Revenue transpired. Likewise, no representatives of the Department of Revenue were present at such times as Davis may have informed any of the various plaintiffs about the substance of these conversations.
The Bureau Chief of the Department of Revenue Sales Tax Bureau, W.D. Mayo testified to the effect that the two Andersons periodically had received sales and use tax report forms for some time through 1968 and 1969. He testified that they continued to be sent forms for several months after they had ceased collecting and remitting tax but that eventually the Department of Revenue, several months after tax remissions had ceased, stopped sending forms to them. Brown continued to receive sales and use tax report forms throughout the period and continued to make small remissions, apparently for sales other than admissions. Nick Maltezo never registered with the Department of Revenue until some time in 1973 and hence received no forms until that time.
The various plaintiffs all testified that the fact that they ceased to collect, or in the case of Brown and Maltezo never collected, admissions taxes was due to their knowledge of the case of Straughn v. Kelly Boat Services, 210 So.2d 266 (1 D.C.A. Fla. 1968), and to some extent, the advice of counsel. Also, the plaintiffs brought forth evidence that DOR officials indicated that no effort would be made to collect the taxes after the Kelly case (cited above).
Without digging more deeply than is necessary into the quagmire of decided cases on this issue, we can now say with assurance that Kelly I, supra, footnote 3, was in error, either by indicating (improperly) that admissions taxes could not be assessed on admission fees charged to fishing boat customers, as stated in Pelican, supra footnote *1037 3, or by erroneously holding the admissions tax void, as declared in George W. Davis & Sons, Inc. v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1977), although it was actually valid, according to Pelican. The Kelly I error and its correction have been revisited most notably in Department of Revenue v. Kelly Boat Service, Inc., 324 So.2d 651 (Fla. 1st DCA 1975), hereafter Kelly II, Davis, and Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA 1979), with seemingly disparate and virtually irreconcilable opinions. Kelly II held that the Department was not foreclosed by Kelly I or otherwise from collecting the admissions tax. However, as recognized by the court in both the Davis and Hobbs decisions, the "primary focus" (Davis at 1333) of the complaining taxpayers in Kelly II was the alleged illegality of the tax, not that the State was estopped to collect it. The Hobbs case was similar to Kelly II in that (although the court's opinion dealt extensively with the estoppel theory and its inapplicability in that case) the "entire thrust" (Hobbs at 368) of the taxpayers' original and amended complaint was that Kelly I prohibited collection of the admissions taxes, with no issue of estoppel being raised by the pleadings.
Summarizing, we are thus faced with the holding of Kelly II that collection of the tax was not prohibited by Kelly I; the holding of Davis that Kelly I might nevertheless be the basis for estoppel in favor of a taxpayer who, with the approval of the Department of Revenue, followed the law as announced in Kelly I, and neglected to collect the admissions tax from his customers; and finally, the holding of Hobbs that the admissions tax was collectible notwithstanding Kelly I, and estoppel, which could be a defense, could not be applied in the circumstances present in that case.
Our analysis convinces us that in certain respects the essential facts of this case are similar to those found in Hobbs, in which the court said:
Even if it were established it was common knowledge among party boat operators that the Department had decided to delay its audits until the uncertainty of its authority to collect-created by Kelly I-was resolved, the circumstance of knowledge still would not create an estoppel against the State. (Id. at 369)
As previously noted, however, the taxpayers did not plead estoppel in the Hobbs case, whereas in the present case they did. Furthermore, the trial judge, in his resolution of this controversy, undoubtedly found this case similar to the circumstances in Davis, in that the taxpayers established their reliance upon the Kelly I decision, and properly pleaded the estoppel defense. Even though, as the Department appropriately points out, the appellees here could not establish any direct contact with Department officials as did the taxpayers in Davis, we nevertheless find the reasoning of the Davis opinion in refusing to allow collection of taxes accruing during the questionable period equally applicable here.
The well-established rules concerning retrospective and prospective application of a decision of a court of last resort have been recognized in Florida, as in Florida Forest and Park Service v. Strickland, 18 So.2d 251 (Fla. 1944). Ordinarily, a decision of a court of last resort overruling a former decision is retrospective as well as prospective in its operation, unless specifically declared by the opinion to have a prospective effect only. Generally, a judicial construction of a statute will ordinarily be deemed to relate back to the enactment of the statute, much as though the overruling decision had been originally embodied in the statute. To this rule, however, there is a certain well-recognized exception that,
... where a statute has received a given construction by a court of supreme jurisdiction and property or contract rights have been acquired under and in accordance with such construction, such rights should not be destroyed by giving to a subsequent overruling decision a retrospective operation... . (Florida Forest and Park Service v. Strickland, supra, at 253)
This exception has been held to apply to the construction of taxation statutes. Mercantile *1038 Nat. Bank of Cleveland, Ohio v. Lander, 109 F. 21 (C.C. Ohio 1901), affirmed Lander v. Mercantile Nat. Bank of Cleveland, Ohio, 118 F. 785 (C.A. Sixth Cir.1902); 21 C.J.S. Courts § 194, page 329. See also City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965), and Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973). Cf. North American Company v. Green, 120 So.2d 603 (Fla. 1959), and Williams v. Jones, 326 So.2d 425 (Fla. 1975).
Without expressly saying so, both this court and the trial court in Davis unmistakeably gave effect to the principle that an overruling decision should not be given retrospective application so as to impair or abridge contract rights acquired under the former decision, as may be seen from the opinion's many references to the taxpayers' justifiable failure to collect the tax from his customers at the time he contracted with them, and his inability to "go back" and collect these back taxes after Pelican reversed Kelly I.
We conclude, after a careful examination of Kelly I, Pelican, and succeeding cases, that a highly unique set of circumstances and precedents has developed during this prolonged admissions tax controversy. The plain fact of the matter is that this court in Pelican distinguished or clarified Kelly I by stating that Kelly I did not deal with the admissions tax, but in Davis, this court placed an entirely different interpretation upon Kelly I by stating that the court in Kelly I "ruled the admissions tax void and later in Pelican receded from such ruling and held the admissions tax valid." (Davis, at 1332)[4] Further, we find language in Davis that amounts to a virtual overruling of Kelly II, but without so stating.[5] The existence of these diverse interpretations and the futility of efforts, even on the part of the trial judges, to apply them in some rational manner furnishes ample reason, in our opinion, to uphold the trial judge's finding of "exceptional circumstances" upon which to base his estoppel ruling.
Under the highly unusual and complex circumstances presented by this controversy, we have determined to leave undisturbed the ruling of the trial judge, who found the facts sufficiently compelling to apply the equitable doctrine of estoppel to enjoin collection of admissions taxes from appellees accruing prior to February 6, 1972, the date of our Pelican mandate.[6]
The judgment appealed from is AFFIRMED.
Upon consideration by the court, en banc, MILLS, C.J., and McCORD, BOOTH, LARRY G. SMITH and THOMPSON, JJ., concurred in majority opinion.
ERVIN, J., dissented with opinion, joined by ROBERT P. SMITH, Jr., and SHAW, JJ.
SHIVERS, WENTWORTH and JOANOS, JJ., by recusal, did not participate in the decision.
ERVIN, Judge dissenting.
The essential facts in this case are indistinguishable from those in Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA 1979), app. dism., 378 So.2d 345 (Fla. 1979). In both cases no direct representations were made by administrative officers to the taxpayers during the three-year statutory period they would not collect the tax, so the element of reliance, necessary to establish estoppel, is lacking. See Greenhut Construction Co., Inc. v. Knott, 247 So.2d 517 (Fla. 1st DCA 1971). Yet, paradoxically, *1039 here we hold the taxpayers excused from paying the admissions tax, whereas in Hobbs we directed the appellant to pay it.
It is true that in Anderson-unlike Hobbs-appellants pled estoppel. Nevertheless, the trial judge in Hobbs specifically ruled the Department was estopped from retaining taxes already collected and from collecting taxes alleged due. On appeal, we held estoppel could not be relied upon to justify the taxes' nonpayment-not because it was not pled, but because the facts did not support the defense.[1]
The majority also holds that because the taxpayers acquired contract or property rights under Straughn v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1st DCA 1968) (Kelly I), the decision overruling Straughn, Dept. of Revenue v. Pelican Ship Corp., 257 So.2d 56 (Fla. 1st DCA 1972), cert. den., 262 So.2d 682 (Fla. 1972), should only be given prospective effect even though the overruling decision itself, and cases following it, Department of Revenue v. Kelly Boat Service, Inc., 324 So.2d 651 (Fla. 1st DCA 1975) (Kelly II) and Department of Revenue v. Hobbs, supra, were applied retrospectively. The issue whether Pelican should be applied prospectively has already been decided contrary to the taxpayers' position. In George W. Davis & Sons, Inc. v. Askew, 343 So.2d 1329, 1333 (Fla. 1st DCA 1977), the court examined the record in Kelly II and found the taxpayers there had contended that "if the tax was valid, the law established by Pelican should be given prospective application only and not retroactive application." While the Kelly II decision does not reflect it explicitly rejected that argument, I can only conclude from the following statement it did so: "The state is not foreclosed by reason of our 1968 decision in Straughn v. Kelly Boat Service, Inc., or otherwise, to assert that ... Kelly should satisfy its full tax liability incurred within three years prior to August 1, 1973." 324 So.2d at 652 (emphasis supplied).
The two Florida cases cited in the majority's opinion to support its position that, under appropriate circumstances, a superseding opinion should be applied prospectively to a construction of the taxing statutes, i.e., City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965) and Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), did not involve impairment of property rights, but where decided upon equitable principles, a fact noted in Williams v. Jones, 326 So.2d 425, 437 (Fla. 1976):
In each of those cited cases the taxing authorities acted in accordance with a statute or ordinance [later declared unconstitutional] and thereby undervalued the property of the taxpayers, thus presumably, lulling the taxpayers into a sense of reliance upon the invalid provisions. In the instant case the taxing authorities have consistently assessed the leasehold interests as real property in accordance with Section 196.001, Florida Statutes, subsequent to its enactment into law in 1971 and have in nowise misled the taxpayers concerning the interpretation of the law.
When as here the Department made no statements to the taxpayers it would not collect the tax, but only delayed its assessments until the uncertainty of its authority to collect-caused not by it, but by a court over which it had no control-was resolved, I fail to see how it can be said that the Department "misled the taxpayers concerning the interpretation of the law."
The majority also suggests that the following language in Davis in effect overruled Kelly II: "During the interim between the court's final opinion in Kelly I and its opinion in Pelican reversing its decision in Kelly I, appellant had no authority to collect the tax." 343 So.2d at 1332. I cannot believe this isolated sentence was intended to supersede the holding in Kelly II. On the contrary, Davis took great pains to distinguish the facts in Kelly II from *1040 those before it, commenting that in Kelly II, "[T]he Department ... never told Kelly or any of the other boat operators ... that the tax was not due." 343 So.2d at 1333. As we observed in Hobbs: "[T]he Davis decision stands on its own exceptional facts." 368 So.2d at 368. In Davis-unlike the facts here and in Hobbs direct representations were made to the taxpayer during the taxable period that the Department would not collect the tax. Thus Davis appropriately applied estoppel for the benefit of a narrow class of taxpayers.
The majority also states that because of this court's "diverse interpretations" of the taxing statutes "ample reason [is furnished] to uphold the trial judge's finding of `exceptional circumstances' upon which to base his estoppel ruling." Ante at 1038. The applicable taxing period involves the dates of August 1, 1970 through July 31, 1973. The only opinion which arguably misled the taxpayers during that time frame was Kelly I, later modified by Pelican. All the other opinions cited by the majority as conflicting-Kelly II, Davis and Hobbs-were decided after the taxable period and are not supportive of any theory of estoppel simply because the taxpayers did not then rely upon them as authority not to collect the tax.
Florida Rule Appellate Procedure 9.331 is the proper mechanism by which a district court maintains "uniformity in [its] decisions." If the majority is dissatisfied with our opinions in Pelican, Kelly II and Hobbs, it should forthrightly overrule them. Both the Rule and the doctrine of stare decisis are ill served by distinctions, only of gossamer strength, advanced to excuse the appellants' obligation to pay the tax-an obligation, which, until now, I had assumed was firmly established by law.
NOTES
[1] Section 212.04, Fla. Stat. (1969).
[2] The date August 1, 1970 is fixed by application of the three year statute of limitations to the Department's demand date of July 31, 1973.
[3] The Pelican case held that the court's decision in Department of Revenue v. Kelly Boat Service, Inc., 210 So.2d 266 (Fla. 1st DCA 1968), Kelly I, prohibited collection of sales taxes on transactions occurring outside Florida's territorial waters, but did not enjoin collection of admissions taxes on admissions fees charged to or paid by fishing boat customers as they boarded the vessels at dockside.
[4] This interpretation of Kelly I, found in the Davis opinion, apparently was not considered in arriving at the court's earlier Kelly II decision, and is not discussed in the Hobbs decision which followed Davis.
[5] "... During the interim between the court's final opinion in Kelly I and its opinion in Pelican reversing its decision in Kelly I, appellant had no authority to collect the tax. .." (Davis, at 1332, emphasis supplied).
[6] As a final note, the 1980 Legislature, by amendments to Subsection (16) of Section 212.02, Florida Statutes, (Chapter 80-213, Laws of Florida, 1980, effective July 1, 1980.), eliminated the admissions tax on "any charge made for entering or staying upon any boat or vessel for the privilege of participating in any sport or recreation, including fishing."
[1] See Hobbs at 369:

We conclude that appellees have failed to establish any theory of estoppel which would bar DOR from retaining taxes already collected or from auditing and assessing the tax liability for appellees for all periods not barred by the statute of limitations.