DIAMANTIS, Judge,
dissenting.
I respectfully dissent. I would reverse and remand this case for an evidentiary hearing.
As I see it, the issue on appeal is whether the Florida Elks Children’s Hospital (Hospital) waited too long before challenging the constitutionality of section 732.803, Florida Statutes (1989) and, consequently, is barred from raising a constitutional challenge because of equitable principles.
Generally, judicial decisions in the area of civil litigation are retrospectively applied; however, a well established exception to this rule was recognized by our supreme court in Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251 (1944):
[W]here a statute has received a given construction by a court of supreme jurisdiction and property or contract rights have been acquired under and in accordance with such construction, such rights should not be destroyed by giving to a subsequent overruling decision a retrospective operation. See 14 Am.Jur.P. 345, Sec. 130; 21 C.J.S. Courts, p. 329, § 194, subsec. b. Based upon a recognition of this commonsense exception to the rule, some of the courts have gone so far as to adopt the view that the rights, positions, and courses of action of parties who have acted in conformity with, and in reliance upon, the construction given by a court of final decision to a statute should not be impaired or abridged by reason of a change in judicial construction of the same statute made by a subsequent decision of the same court overruling its former decision. Accordingly, such courts have given to such overruling decisions a prospective operation only, in the same manner as though the new construction had been added to the statute by legislative amendment.
Id., 18 So.2d at 253.
This exception has been applied to situations where a statute has been initially declared constitutional and subsequently held to be unconstitutional. See International Studio Apartment Association, Inc. v. Lockwood, 421 So.2d 1119 (Fla. 4th DCA 1982). Lockwood involved the constitutionality of section 28.33, Florida Statutes (1977) which authorized the clerk of the circuit court to invest funds deposited into the registry of the courts and provided that interest earned in this fashion would be deemed income of the office of the clerk of the circuit court. This statute was declared constitutional by the Florida Supreme Court in Beckwith v. Webb’s Fabulous Pharmacies, Inc., 374 So.2d 951 (Fla.1979). Subsequently, in Webb’s Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) that portion of the statute which permitted the clerk to retain the income earned on deposited funds was declared unconstitutional in that the statute worked an unconstitutional taking. On remand the Florida Supreme Court further declared unconstitutional the portion of the statute which authorized the clerk to invest deposited funds. Beckwith v. Webb’s Fabulous Pharmacies, Inc., 394 So.2d 1009 (Fla.1981).
*543 In Lockwood, the Fourth District concluded that this holding would be applied prospectively only relying upon both the exception set forth in Strickland and the federal three-phase test of Chevron Oil Company v. Huson, 404 U.S. 97, 105, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).[1] International Studio Apartment Association, Inc. v. Lockwood, 421 So.2d at 1123.
The majority opinion attempts to distinguish or limit Lockwood when it states “in Lockwood there was a specific finding that the Supreme Court had indicated that it would apply such ruling only prospectively.” The Lockwood language to which the majority refers deals with the Florida Supreme Court’s first Beckwith decision in which the statute was held constitutional, and I quote from Lockwood:
Further, there is at least a hint in the Florida Supreme Court’s earlier decision upholding the constitutionality of the statute that at least [the Florida Supreme Court] would apply such a ruling only prospectively.
Lockwood, 421 So.2d at 1121.
However, the majority apparently overlooks the earlier language of Lockwood which discusses the 1980 United States Supreme Court opinion in Beckwith, declaring the statute unconstitutional:
Had the 1980 decision declaring the statute unconstitutional emanated from the Florida Supreme Court rather than the Supreme Court of the United States, it would have qualified as an “overruling decision” and the exception permitting prospective operation only would have applied.
Lockwood, 421 So.2d at 1121.
The Strickland exception has been recognized and applied in numerous other factual situations to support the decision to apply prospectively an overruling decision regarding the constitutionality of a statute. In these cases the facts establish that a party has relied on prior precedent and acquired valuable property or contract rights as a result of a previous court decision and that a retroactive application of the subsequent ruling would cause a hardship or injustice. See, e.g., Frazier v. Baker Material Handling Corp., 559 So.2d 1091 (Fla.1990) (decision resurrecting statute of repose which now barred cause of action accruing before expiration of statute of repose time period not applied retroactively); Melendez v. Dreis and Krump Mfg. Co., 515 So.2d 735 (Fla.1987) (legislative amendment abolishing statute of repose construed not to apply retroactively); Department of Revenue v. Anderson, 389 So.2d 1034 (Fla. 1st DCA 1980) (where taxpayers relied upon previous judicial interpretation of admissions tax statute and Department of Revenue indirectly indicated that taxpayers would not be accountable for uncollected taxes during period in which they relied upon previous judicial statutory interpretation, estoppel applied to prevent collection of taxes for that period). In contrast, the mere expenditure of funds in the prosecution of a suit prior to the rendition of the subsequent decision does not constitute the acquisition of property or contract rights. See Brackenridge v. Ametek, Inc., 517 So.2d 667 (Fla.1987) (subsequent decision upholding constitutionality of statute of repose applied retroactively to bar plaintiff’s suit where the plaintiff was not deprived of any property or contract rights nor did plaintiff rely on the prior decision); Florida East Coast Railway Company v. Rouse, 194 So.2d 260 (Fla.1967) (subsequent holding of unconstitutionality of railroad comparative negligence statute applied retroactively while case on appeal).
*544 It appears from the instant record that probate of the estate commenced about January 31, 1989, when letters of administration were issued. By April 21, 1989, the Hospital received at least one, if not two notices that the children of the testator were contesting the devise to the Hospital pursuant to section 732.803. On July 21, 1989 the children of the testator, along with their children who took the remainder in trust in the event the Hospital’s bequest failed, executed an alternative trust with G. Steve Stanley, the original trustee, and Sun Bank, as successor trustee. This trust agreement provides for distribution of life income to the testator’s children with the principal being distributed to the testator’s grandchildren. In an order dated July 25, 1989 the trial court approved this agreement and directed the personal representative and trustee to comply with it. Of the $2,400,000.00 in estate assets which were distributed to Sun Bank in August of 1989, approximately $920,000.00 was paid in estate taxes.
On October 20, 1988, this court upheld the constitutionality of section 732.803 relying upon Taylor v. Payne, 154 Fla. 359, 17 So.2d 615, appeal dismissed, 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541 (1944). Zrillic v. Estate of Romans, 535 So.2d 294 (Fla. 5th DCA 1988).[2] The Florida Supreme Court accepted jurisdiction of that case on June 6, 1989. Romans v. Zrillic, 545 So.2d 869 (Fla.1989). See also, Shriners Hospitals for Crippled Children v. Zrillic, 545 So.2d 869 (Fla.1989). On May 31, 1990, the Florida Supreme Court quashed in part our decision in Zrillic sub. nom. Shriners Hospitals for Crippled Children v. Zrillic, 563 So.2d 64 (Fla.1990) and overruled its prior decision in Taylor. However, not until August 31, 1990 did the Hospital file a response to the notice to avoid charitable devise, raising a challenge to the constitutionality of the statute. This was more than one year after the Florida Supreme Court accepted jurisdiction of Zrillic and over sixteen months after the Hospital received notice to void its bequest. The Hospital did not act until shortly before the estate was to be closed and more than a year after distribution was made. By this time, the testator’s children, the former trustee, and Sun Bank, as successor trustee, had entered into an agreement pursuant to which the personal representative made distribution and paid $920,000.00 in estate taxes.
In considering the equities involved in this case, it is important to note that the constitutionality of the statute which later became section 732.803 had been sustained in Taylor.[3] Consequently, until May 31, 1990, when Shriners Hospital for Crippled Children v. Zrillic, 563 So.2d 64 (Fla.1990) was decided, the highest court of this state had upheld the statute’s validity.
Obviously, some change in position and reliance by the testator’s children, the former trustee, the successor trustee and the personal representative occurred because of the Hospital’s failure to act in a timely manner. Based upon this reliance, these parties entered into a contractual agreement regarding distribution of the estate’s assets and established a trust pursuant to the approval of the trial court which directed that distribution be made pursuant to said agreement. Accordingly, I conclude that the Strickland exception is, at the very least, a factor which the trial court should have considered.
I acknowledge that the Florida Supreme Court, in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991), apparently recognized that, in determining whether a statute is void ab initio, the court “seemingly has distinguished between the constitutional authority, or power, for the enactment as opposed to the form of the enactment.” Id. at 1174. In Martinez, the court declared portions of the worker’s compensation statute uncon *545 stitutional because of the form of its enactment. In deciding to void the statute prospectively from the date of its opinion the court did not rely solely on the ground that the statute was void based upon form. Rather, the Court recognized and followed the line of authority which encourages our courts to consider equitable matters in determining whether to apply prospectively a decision holding a statute unconstitutional. See ITT Community Development Corp. v. Seay, 347 So.2d 1024 (Fla.1977) (statute determining just valuation for ad valorem taxation violates just valuation provision of the constitution); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla.1973) (statute authorizing certain platted land to be valued for tax assessment'purposes on the same basis as unplatted acreage violates constitutional provision proscribing just valuation for all property in that statute established a classification of property to be valued on a different standard than all other property); Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973) (statute authorizing school districts to levy ad valorem taxes in excess of ten mills without a vote of the electors conflicts with constitutional provision requiring such a vote). See also Aldana v. Holub, 381 So.2d 231 (Fla.1980) (medical mediation act violates due process).[4]
The majority opinion in Martinez cites numerous United States Supreme Court decisions which have relied upon equitable principles to order prospective application of an opinion following a successful constitutional challenge to a statute. For example, the court cites to Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). In Cipriano, the Court declared unconstitutional a Louisiana statute which gave only “property taxpayers” the right to vote in elections called to approve the issuance of revenue bonds by a municipal utility, concluding that the state legislature lacked the authority or power under the equal protection clause to limit the right to vote to property taxpayers in such elections. The Court decided to apply its decision prospectively, reasoning that:
Significant hardships would be imposed on cities, bondholders, and others connected with municipal utilities if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the “injustice or hardship” by a holding of nonretroactivity.
Cipriano v. City of Houma, 395 U.S. at 706, 89 S.Ct. at 1900. This language was quoted with approval in Martinez v. Scanlan, 582 So.2d at 1175. See also Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
I also find persuasive the principles expressed in American Trucking Associations, Inc. v. Smith, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990). In Smith, the court was required to decide whether to enforce prospectively an earlier decision which declared a state tax statute invalid under the commerce clause. In deciding to enforce the decision prospectively, the Court relied upon equitable considerations:
[T]he dissent’s view that the doctrine of civil retroactivity is a remedial principle would surprise the many commentators, appellate courts, see Note, Confusion in Federal Courts: Application of the Chevron Test in Retroactive-Prospective Decisions, 1985 U.Ill.L.Rev. 117, 128-136, and state courts that have considered [Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) ] to be exactly what this Court has always understood it to be: a doctrine or set of rules for determining when past precedent should be applied to a case before the court. As such, Chevron Oil is better understood as part of the doctrine of stare decisis, rather than as part of the law of remedies. This is how nonretroac-tivity was first characterized by Justice *546 Cardozo in Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). Considering a state court’s power to apply its own decisions prospectively only, Justice Cardozo asserted:
“We have no occasion to consider whether this division in time of the effects of a decision is a sound or an unsound application of the doctrine of stare decisis as known to the common law. Sound or unsound, there is involved in it no denial of a right protected by the federal constitution ... A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.” Id., at 364, 53 S.Ct. at 148.
See also United States v. Estate of Donnelly, 397 U.S. [286] at 295, 90 S.Ct. [1033] at 1038 [25 L.Ed.2d 312] (Harlan, J., concurring). In those relatively rare circumstances where established precedent is overruled, the doctrine of nonre-troactivity allows a court to adhere to past precedent in a limited number of cases, in order to avoid “jolting the expectations of parties to a transaction.” Ibid. See also Justice Scalia’s opinion, post, [496 U.S. at 200, 110 S.Ct.] at 2343. Although Justice Scalia declines to rely on our doctrine of nonretroactivity, his understanding of stare decisis leads him to conclude that a judge who disagrees with a decision overruling prior precedent must vote to uphold the validity of “action taken [in reliance on that precedent] before the overruling occurred.” Post, [496 U.S. at 205, 110 S.Ct.] at 2345. As Justice Cardozo discerned, prospective overruling allows courts to respect the principle of stare decisis even when they are impelled to change the law in light of new understanding.
Smith, 496 U.S. at 196-197, 110 S.Ct. at 2340-2341. The dissenting opinion in Martinez recognizes the doctrine of adhering to past precedent in a limited number of cases in order to avoid “jolting the expectations of the parties to a transaction”. See Martinez v. Scanlan, 582 So.2d at 1177 n. 10.
I would follow the Strickland exception and the approach of the majority opinion in Martinez as well as the principles enunciated in Smith rather than follow the rationale of the dissenting opinion in Martinez and expand upon that rationale, as does the majority opinion in this case. In this regard, I cannot subscribe to the majority’s reasoning that once a statute is declared unconstitutional by an overruling decision, that holding must always be applied retroactively, without regard to the statute, the prior decision upholding the statute, a party’s acquired property or contract rights based upon reliance on established law and precedent, or to the adverse party’s failure to timely assert its legal rights. Such logic overlooks Justice Holmes’s cogent observation that the law is based upon human experience and not logic.[5] I also find unpersuasive the suggestion that only the Florida Supreme Court, as the court which rendered Zrillic, can determine that the decision should only be applied prospectively. I submit that until the Florida Supreme Court rules in this context, this court can make this determination subject, of course, to review by the Florida Supreme Court.
In my opinion, a full evidentiary hearing must be conducted in order to determine the equities in this case. At the hearing, the extent of the parties’ change of position and reliance, as well as the extent of any acquired property or contractual rights by each of these parties must be analyzed. Also, the position of Sun Bank, which administers the trust as trustee, should be considered and evaluated. Additionally, the status of the $920,000.00 paid to the Internal Revenue Service for estate taxes should be considered along with any possible tax consequences that may ensue in the event the Sun Bank trust is nullified, especially if that trust proves to be irrevocable. In short, the trial court must determine to *547 what extent valuable property or contract rights have been acquired in reliance upon Taylor.

. This three-phase test consists of: (1) the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or decides an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits in each case must be weighed by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation; and (3) the inequity of imposing retroactive application must be weighed in that where a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding injustice or hardship by a holding of non-retroactivity. Chevron Oil Company v. Huson, 404 U.S. at 106-107, 92 S.Ct. at 355-356.

. Rehearing denied January 4, 1989.

. In Taylor, the Florida Supreme Court rejected the contention that the then-existing section 20 of the Probate Act, the pertinent portions of which were codified as section 732.803, was unconstitutional "in that it deprives the testator and the legatees of the right to receive, enjoy and dispose of property without due process of law, and denies them the equal protection of the law in the acquisition and disposition of property.” Taylor v. Payne, 17 So.2d at 617.

. Justice Barkett, who dissents in Martinez on the retroactivity issue, recognizes that in the past the court has ordered prospective application following a successful constitutional challenge and cites Aldana.

. "The life of the law has not been logic: it has been experience." O.W. Holmes, Early Forms of Liability in The Common Law & Other Writings, p. 1 (1982).